MOORE, Judge.
This is the second time these parties, Beverly Renee Shewbart (“the wife”) and John Michael Shewbart (“the husband”), have been before this court.[1] In Shewbart v. Shewbart, 19 So.3d 223 (Ala.Civ.App.2009) (“Shewbart”), the wife appealed from the trial court’s July 10, 2008, judgment of divorce. In that judgment, the trial court divided the parties’ marital property, assigning a value of $14,000 to the parties’ business, known as John Shewbart d/b/a Swamp John’s Restaurant & Catering, and awarded the wife one-half of that value. The wife appealed, asserting that the trial court had erred in its valuation of the business and by failing to award her alimony.
This court reversed the trial court’s judgment as to the property division and the failure to award alimony, concluding that, in valuing the business, the trial court had failed to consider the consistent income stream derived from the business. Shewbart, 19 So.3d at 232. We remanded the cause “for the trial court to determine the fair-market value of the sole proprietorship, taking into consideration all of its assets, and to then consider that value in fashioning an equitable division of the marital property.” 19 So.3d at 233. We also instructed the trial court to reconsider, in light of any new property division it entered on remand, whether the wife was entitled to an award of alimony. Id. We affirmed all other aspects of the trial court’s judgment.
On February 25, 2010, the trial court conducted another evidentiary hearing. At that hearing, in addition to taking further testimony from the husband and the wife, the trial court heard the testimony of Carter Norvell, a certified public accountant with expertise in business valuations who had been hired by the wife. Norvell stated that, in his opinion, the income-approach method was the most appropriate way to value the parties’ business and that he had calculated a value for the business under the income-approach method using two different sources of information.
Norvell first relied on information obtained from the husband’s 2006 and 2007 federal income-tax returns. He calculated the earnings of the business before any *1083 deductions were taken for interest, taxes, depreciation, or amortization (generally referred to as “EBITDA”), averaged the EBITDA obtained for those two years, and then applied a multiple of four to arrive at an estimated value of the business as an ongoing enterprise.[2] Using that income-approach method, Norvell valued the business at $191,376.[3]
Norvell then calculated the value of the business by considering the husband’s deposition testimony, in which the husband testified that he withdrew $1,500 per week from the business as his salary. Norvell multiplied that $1,500 weekly salary by 50 weeks (allowing two weeks a year as vacation), which provided a total annual net income of $75,000; to that annual net income, Norvell applied a multiple of four to arrive at an estimated value of the business of $300,000.
Norvell explained his decision to apply a multiple of four in his valuation as follows:
“I used a multiple of four, which I feel ... is conservative. Businesses, traditionally, are valued anywhere from ... maybe a low of three up to ... a number quite a bit higher. We have had businesses sell for multiples of 10 or 12 before but those are a little bit unusual.”
Responding to the trial court’s request for further information regarding the multiple to be applied in the valuation, Norvell stated:
“It is ... a judgment call, basically ... on the side of the valuation analyst. And you just, you take everything into consideration as far as a business, how it’s run, you know, things of that nature and apply a multiple to the net earnings of that business to try to come up with a fair estimate of the — what the value of that business is.”
Norvell admitted that his decision to use a multiple of four could be considered arbitrary.
Norvell also acknowledged that the husband’s 2008 income had not been provided to him and that the 2008 data was more relevant than the 2006 and 2007 data in determining the value of the business. Norvell admitted that the economy in the United States had suffered a downturn in the last several years and that a downturn in the economy could negatively impact the husband’s income. Norvell, however, testified that he had no indication that the economy had, in fact, impacted the husband’s income.
Norvell also acknowledged that, at the time he performed his valuation, he had been unaware that the husband worked 70 to 80 hours per week in the business. Norvell agreed that, if the husband’s net income for 2008 had been $14,352, as represented, and the husband had worked 70 to 80 hours a week to earn that amount, Norvell would have placed a different, presumably lower, value on the business. Norvell also testified that he had been unaware that the business was located in a facility owned by the husband’s sister and rented by the husband; Norvell testified that the location of the business was relevant to its value.
On March 23, 2010, the trial court entered an amended divorce judgment, stating:
*1084 “1. The Court heard evidence concerning the value of the sole proprietorship. It is not an easy proposition to put a value on a business such as Swamp John’s. It is largely a one-man organization that’s value is greatly determined by how many hours are put in by the owner. The sole proprietorship does not own the property where it is located. The Court had already divided the value of the equipment of the business between the two parties.
“2. The Court is left to determine the future earning capacity of the business. The Court is persuaded to use the income approach as the model to determine the value of the business. The Court has averaged the last three years income as reported on the tax forms. The income figure is the number before depreciation. These were $47,726.00 for 2006, $42,901.00 for 2007, and $14,352.00 for 2008. The three year average is $34,993.00.
“3. The Court will then take the average of $34,993.00 and multiply by two. The Court finds the multiple of two is appropriate based on the testimony of Carter Norvell, who described the income approach. The Court uses the multiple of two instead of a number such as four because of the long hours of the business and what the Court feels is a realistic value in the local economy. This produces a value of $69,986.00. One-half of this number is $34,993.00. The Court subtracts $7,000.00 for what it already allocated to the [wife] for her interest in the equipment and vehicles of the business. This produces the value of $27,993.00, which is still owed to the [wife]. The Court will round this figure to $28,000.00.
“4. The Court ORDERS the [husband] to pay the amount of $28,000.00 to the [wife] for her one-half interest in the business. The [husband] shall pay the amount of $400.00 a month for seventy (70) months to equal the total of $28,000.00.
“5. All other provisions of the Divorce Decree are adopted as fully set out.”
The wife again appeals.[4]

Analysis

On appeal, the wife asserts that the trial court failed to follow this court’s mandate on remand; that the judgment entered by the trial court on remand was against the great weight of the evidence and, thus, exceeded the trial court’s discretion; that the trial court’s valuation of the business was the result of a miscalculation; and that the trial court committed reversible error in failing to award her alimony.

Business Valuation

We first address the wife’s argument that the trial court failed to follow this court’s mandate on remand. In Ex parte Alabama Power Co., 431 So.2d 151, 155 (Ala.1983), the supreme court, quoting 5 Am.Jur.2d Appeal and Error § 991 (1962), stated:
“ ‘It is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court. No judgment other than that directed or permitted by the reviewing court may be entered.... The appellate court’s decision is final as to all matters before it, becomes the law of the case, and must be executed according to the mandate, without granting a new trial or taking additional evidence ....’”
*1085 As stated above, in Shewbart, supra, we remanded the cause “for the trial court to determine the fair-market value of the sole proprietorship, taking into consideration all of its assets, and to then consider that value in fashioning an equitable division of the marital property.” 19 So.3d at 233. We also instructed the trial court to reconsider, in light of any new property division entered, whether the wife was entitled to an award of alimony. Id.
On remand, the trial court conducted a hearing and received evidence for the purpose of determining the value of the business. The trial court then entered a judgment addressing the value of the business in light of the evidence presented at that hearing. The trial court divided the remaining marital asset and, although it did not expressly address the issue, it implicitly denied the wife’s claim for alimony. In light of the hearing held on remand, the issues considered at that hearing, and the language of the trial court’s judgment, we must conclude that, on remand, the trial court complied with this court’s mandate in Shewbart, supra.
The wife next asserts that the trial court erred in valuing the business. The judgment indicates that the trial court accepted Norvell’s opinion that the “income-approach” method should be used to assess the value of the business. As explained by Norvell, under that method, the evaluator first determines the EBITDA average of the business and then applies a multiple that takes into account various factors relating to the operation of the business. The trial court followed that methodology by using the most recent three years of the husband’s income-tax returns to determine the EBITDA average and then multiplying that average by two. The wife contends that the trial court erred in selecting both the figures upon which it based its EBITDA average and in using a multiple of two. The wife maintains that the trial court should have determined that the husband was actually earning $1,500 per week from the business, not the lesser numbers reflected in his income-tax returns. The wife further contends that, even if the figures from the income-tax returns are reliable, the trial court misconstrued those returns for the tax years 2006 and 2007. The wife finally argues that the use of a multiple of two is not based on the evidence, but rests on pure speculation and conjecture.
In September 2007, the husband testified in his deposition that he made $1,500 per week from the business. Bank-account records from 2006 and 2007 introduced by the wife at trial also indicated that the husband was depositing and spending around $1,500 per week during that period. However, the parties’ income-tax return shows that the EBITDA figure for 2006 was approximately $42,905, or $825.10 per week. In 2007, the EBIT-DA figure as reported on the husband’s income-tax return amounted to $52,782, or $1,015.04 per week. In June 2008, at the time of the first trial, the husband reiterated that the business earned roughly $1,500 per week. According to his 2008 income-tax return, however, we calculate the 2008 EBITDA figure for the business to be $14,352, or $276 per week. Based on the foregoing evidence, the wife maintains that the income-tax returns do not accurately reflect the income of the business but that the testimony of the husband establishes its actual earnings of $1,500 per week.
The evidence is not, however, as one-sided as the wife maintains. In his September 2007 deposition, the husband testified that he “usually averaged” $1,500 per week and that “[he] guess[ed] that’s right” that he received $75,000 to $76,000 per year in income from the business, which was a sole proprietorship. At the June *1086 2008 trial, the husband testified that, although he believed the business made $1,500 per week, its actual earnings were “whatever the tax returns would show.” The husband testified that his income-tax returns recorded all income received by the business, even the cash the husband took out of the business for personal use. The husband also testified that the bank accounts included deposits not only from money earned by the business, but also dividends from another business, loans from his parents, and money transferred from a home-equity line of credit. Thus, the trial court reasonably could have concluded that the income-tax returns accurately state the earnings of the business despite the existence of the evidence to the contrary. It is the duty of the trial court, not this court, to resolve conflicting evidence. Young v. Young, 515 So.2d 32, 33 (Ala.Civ.App.1987). Although this court may have been persuaded that the business had higher earnings, “an appellate court may not substitute its judgment for that of the trial court; Alabama law does not allow this court to reweigh the evidence.” See Pate v. Guy, 942 So.2d 380, 387 (Ala.Civ.App.2005).
We do, however, agree with the wife that the trial court committed a mathematical error in calculating the EBITDA average from the income-tax returns. The trial court purported to use the husband’s income-tax returns from 2006 through 2008 to establish a three-year EBITDA average. As stated above, those income-tax returns show that the EBITDA figures were $42,905 in 2006; $52,782 in 2007; and $14,352 in 2008. The trial court erroneously derived the EBITDA amounts for 2006 as $47,726 and for 2007 as $42,901. Using the incorrect figures, the trial court determined the EBITDA three-year average to be $34,993 instead of the correct amount of $36,679.67.
However, we conclude that the trial court did not commit any error in using a multiple of two to value the business. The trial court explained that it reduced the multiple to account for the long hours worked by the husband and the economic conditions prevailing in Franklin County, factors Norvell testified would affect the value of the business but which he had not taken into account. The evidence in the record shows that the husband often worked 70 to 80 hours per week in the business. Additionally, the trial court heard evidence of the high unemployment rate in the community, and it could also take judicial notice of the local economy. See, e.g., Clarke v. Clarke, 47 Ala.App. 558, 564, 258 So.2d 902, 907 (1972) (taking judicial notice of inflated economy); and First Nat’l Bank of Opp v. Wise, 241 Ala. 481, 484, 3 So.2d 68, 71 (1941) (taking judicial notice of nationwide economic depression). Although Norvell testified that he had personally never used a multiple lower than three, Norvell did not testify that the use of such a multiple would be completely outside the norms of valid valuation practices. In light of those circumstances, and considering further that Norvell testified that the use of a multiple of four could be considered arbitrary, we cannot say that the trial court engaged in speculation and conjecture in using a lower multiple, as the wife contends. We also cannot place the trial court in error for not adopting either of the computations advocated by Norvell. See Bunn v. Bunn, 628 So.2d 695, 697 (Ala.Civ.App.1993) (“An expert’s opinion is not conclusive on the trier of fact, even if the testimony was uncontroverted, because a trial court must look to the entire evidence and its own observations in deciding factual issues.”).
Putting the correct figures into the formula used by the trial court, the value of the business should have been computed to be $73,359.34. Because the trial court in *1087 dicated its intent to award the wife one-half of that value, less $7,000 for the value the wife had already received, the trial court should have awarded the wife $29,679.67 rather than the $28,000 stated in its judgment. We therefore reverse the judgment and remand the case for the trial court to correct that error.[5]

Periodic Alimony

The wife finally asserts that the trial court exceeded its discretion in failing to award her periodic alimony. Under Alabama law, periodic alimony consists of regular installment payments made from one spouse to another to enable the recipient spouse, to the extent possible, to maintain his or her standard of living as it existed during the marriage, i.e., the “economic status quo.” Orr v. Orr, 374 So.2d 895, 897 (Ala.Civ.App.1979). A divorcing spouse is not automatically entitled to periodic alimony, Beckwith v. Beckwith, 475 So.2d 575, 577 (Ala.Civ.App.1985) (holding that periodic alimony is not mandatory), but the decision whether to award periodic alimony rests in the sound judicial discretion of the trial court. Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000).
In exercising its discretion, the trial court is guided by equitable considerations. See Killingsworth v. Killingsworth, 925 So.2d 977, 983 (Ala.Civ.App. 2005). This court and our supreme court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, Edwards v. Edwards, 26 So.3d 1254, 1259 (Ala.Civ.App.2009), which include: the length of the marriage, Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009); the standard of living to which the parties became accustomed during the marriage, Washington v. Washington, 24 So.3d 1126, 1135-36 (Ala.Civ.App.2009); the relative fault of the parties for the breakdown of the marriage, Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); the age and health of the parties, Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000); and the future employment prospects of the parties, Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ. App.2003). In weighing those factors, a trial court essentially determines whether the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet. See Gates v. Gates, 830 So.2d 746, 749-50 (Ala.Civ.App.2002); Hewitt v. Hewitt, 637 So.2d 1382, 1384 (AIa.Civ.App.1994) (“The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the wife are shown to merit an award and the husband has the ability to pay.”).
A petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties’ former marital lifestyle. See Pickett v. Pickett, 723 So.2d 71, 74 (Ala.Civ.App.1998) (Thompson, J., with one judge concurring and two judges concurring in the result). *1088 As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala.Civ.App.1997); and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996). The petitioning spouse should then establish his or her inability to achieve that same standard of living through the use of his or her own individual assets, including his or her own separate estate, the marital property received as part of any settlement or property division, and his or her own wage-earning capacity, see Miller v. Miller, supra, with the last factor taking into account the age, health, education, and work experience of the petitioning spouse as well as prevailing economic conditions, see DeShazo v. DeShazo, 582 So.2d 564, 565 (Ala.Civ.App.1991), and any rehabilitative alimony or other benefits that will assist the petitioning spouse in obtaining and maintaining gainful employment. See Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995). If the use of his or her assets and wage-earning capacity allows the petitioning spouse to routinely meet only part of the financial costs associated with maintaining the parties’ former marital standard of living, the petitioning spouse has proven a need for additional support and maintenance that is measured by that shortfall. See Scott v. Scott, 460 So.2d 1331,1332 (Ala.Civ.App.1984).
Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. See Herboso v. Herboso, 881 So.2d 454, 458 (Ala.Civ.App.2003). The ability to pay may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51(a), Ala.Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties’ former marital standard of living. Herboso, supra. In considering the responding spouse’s ability to pay, the trial court should "take into account all the financial obligations of the responding spouse, including those obligations created by the divorce judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996). The trial court should also consider the impact an award of periodic alimony will have on the financial condition of the responding spouse and his or her ability to maintain the parties’ former marital lifestyle for himself or herself. Id. A responding spouse obviously has the ability to pay if the responding spouse can satisfy the entirety of the petitioning spouse’s needs without any undue economic hardship. See, e.g., MacKenzie v. MacKenzie, 486 So.2d 1289, 1292 (Ala.Civ.App.1986). In most cases, however, simply due to the fact that, after separation, former spouses rarely can live as well and as cheaply as they did together, Gates, 830 So.2d at 750, a trial court will find that the responding spouse cannot fully meet the financial needs of the petitioning spouse. Walls v. Walls, 860 So.2d 352, 358 (Ala.Civ.App.2003). In those cases, the trial court should endeavor to determine the amount the responding spouse can fairly pay on a consistent basis. See Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App.1998).
After being satisfied that the petitioning spouse has a need for periodic alimony and that the responding spouse has some ability to meet that need, the trial court should consider the equities of the case. The length of the marriage does not determine the right to, or amount of, periodic alimony. Hatley v. Hatley, 51 So.3d 1031, 1035 (Ala.Civ.App.2010). However, the longer *1089 the parties have maintained certain living and financial arrangements, the more fair it will seem that those arrangements should be maintained beyond the divorce to the extent possible. See Edwards v. Edwards, 410 So.2d 91, 93 (Ala.Civ.App.1982). The trial court should also give due regard to the history of the marriage and the various economic and noneconomic contributions and sacrifices made by the parties during the marriage. See Hanna v. Hanna, 688 So.2d 887, 891 (Ala.Civ.App.1997). In light of those factors, the trial court should endeavor to avoid leaving the parties in an unconscionably disparate financial position. Jones v. Jones, 596 So.2d 949, 952 (Ala.Civ.App.1992). However, the trial court can consider whether the marriage, and its attendant standard of living, ended due to the greater fault of one of the parties, and, if so, the trial court can adjust the award accordingly. Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004). Lastly, the trial court should consider any and all other circumstances bearing on the fairness of its decision. See Ashbee v. Ashbee, 431 So.2d 1312, 1313-14 (Ala.Civ.App.1983).
The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala.Civ.App.1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala.Civ.App.1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala.Civ. App.1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21-12(a), Ala.Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980).
The wife argues that she established a need for financial assistance. We agree. The wife presented an exhibit at the trial on remand itemizing her monthly expenses, which amounted to $2,814.80. Those expenses included the ordinary costs of living, such as housing, utility, food, clothing, and transportation costs, but the wife also included her medical expenses of $819.80 per month, the bulk of which relate to prescription-drug costs. The wife testified at the first trial that she suffers from painful back problems, a cardiac condition, high blood pressure, a thyroid illness, attention deficit disorder, bipolar disorder, and depression. The husband doubted the extent of the wife’s health problems, referring to her as a hypochondriac, but he did not present any medical evidence disputing the wife’s need for the treatments and medications. The husband also did not dispute any of the foregoing expenses as being unreasonable or outside the parties’ former marital standard of living.
The record does not indicate that the wife maintained any separate estate from the husband. In the property-division award, the wife originally received $28,500 payable at a rate of $250 per week for 114 weeks, which terminated in November 2010. On remand, as corrected above, the wife received an additional approximately $30,000, payable in installments of $400 per month. The wife also received in the judgment the right to one-half of the net proceeds from the sale of the marital home. At the time of the trial on remand, the wife continued to live in the marital *1090 home despite the terms of the judgment, which required the marital home to be sold when the parties’ child reached age 19, which occurred on April 26, 2010. The evidence indicated that the marital home was worth between $80,000 and $110,000 and that the parties owed approximately $75,000 on a home-equity line of credit. Thus, the wife could expect to obtain less than $10,000 from the sale of the marital home. The trial court also awarded the wife all rights, title, and interest to a 2000 or 2001 Lincoln Navigator, which was inoperable at the time of the trial on remand.
When the parties married in 1990, the wife worked in a factory. She became pregnant with the parties’ child not long after the parties married and quit working for a period. The wife testified that, after she gave birth to the child, she resumed working in the factory for several years until the factory closed. The husband testified the wife worked for a much shorter period. After the factory closed, according to the wife, she worked sporadically for the husband’s business. The husband testified that she did not work for his business much at all. The wife also sold items on an Internet auction site for extra money. The wife had not been formally employed elsewhere for at least 14 years at the time of the divorce. The wife had graduated high school and had some college and business-school credits, but she has no postsecondary degree. At the original trial, the wife indicated on a CS-41 form, see Rule 32, Ala. R. Jud. Admin., that she could earn minimum wage, which now equates to roughly $1,257 per month. At the trial on remand, the wife testified that her back pain and other health problems persisted so that she could work only part time. The wife had obtained a clerical position from her brother, an hour’s drive from her home, earning $8 per hour for 24 hours per week, which the wife indicated was the limit of her earning capacity. The wife nets $769.16 per month from that employment, according to her exhibit. The husband presented no evidence at the trial on remand to contradict the wife regarding her present earning capacity.
The foregoing evidence establishes that, even with using the property awarded to her in the divorce judgment and working to her fullest capacity, the wife cannot be expected to meet all of her financial needs. By our calculations, the wife will be unable to meet approximately $1,600 of her monthly expenses without any periodic alimony.
The wife argues further that the husband has ample resources from which to meet the needs of the wife. The wife asserts that, “if [the husband] is making $1,500 a week, [a] $1,000 per month [alimony obligation] would not be excessive. ...” (Wife’s brief, p. 26.) However, as we have decided above, the trial court rejected the wife’s contention that the husband is making $1,500 per week from the business. Based on the findings made by the trial court, in 2008 the husband was earning only $276 per week from the business. The wife does not argue that the husband has the ability to pay her alimony from those earnings while also sustaining his own living conditions and paying her $400 per month for her interest in the business. The wife also does not argue that the husband is capable of earning higher wages. See Henning v. Henning, 26 So.3d 450, 456 (Ala.Civ.App.2009) (holding that ability to pay alimony is based on the ability to earn, not actual earnings). The wife further does not argue that the husband has the present ability to pay alimony to her from the marital assets he retained following the dissolution of the marriage or from his separate estate. -See Rule 28(a)(10), Ala. R.App. P. Therefore, *1091 we cannot agree that the trial court erred in failing to order the husband to pay the wife periodic alimony.
However, we agree with the wife that the trial court erred in failing to reserve the right to award periodic alimony in the future. The parties were married for 16 years, during which the wife served primarily as a mother and a homemaker. Although the husband testified that he left the wife due to her moodiness and verbal abuse, the trial court heard evidence indicating that the wife had been diagnosed with bipolar disorder and other emotional illnesses and it divorced the parties solely on the ground of incompatibility. The record does not contain evidence from which the trial court could have reasonably concluded that the wife committed such misconduct as to forever bar her from receiving periodic alimony. The evidence establishes that the wife will likely sustain a permanent need for financial assistance. Although the business is currently not earning as much as it has in the past, recessed economic conditions are subject to change and the husband may eventually be able to earn sufficient income to afford to pay the wife periodic alimony. “The trial court should reserve jurisdiction over the issue of alimony if the facts indicate that future circumstances may entitle either party to a later award of alimony.” Williams v. Williams, 905 So.2d 820, 828 (Ala.Civ.App.2004). Considering the circumstances, we reverse the judgment for the trial court to reserve the right to award periodic alimony based on changed circumstances in the future.

Conclusion

We reverse the trial court’s March 23, 2010, judgment and remand the case with directions for the trial court to correct its judgment as to the amount owed to the wife for her one-half interest in the business and to modify its judgment to reserve the right to award the wife periodic alimony in the future.
The wife’s request for an award of attorney fees on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and concurs in the result, with writing.

. The factual background of this case is set forth in Shewbart v. Shewbart, 19 So.3d 223 (Ala.Civ.App.2009).

. Norvell testified that "[o]ne of the most commonly used methods that we work with is a term we call EBITDA, which is E-B-I-T-DA, and that’s the earnings of a business before any deduction for interest, taxes, depreciation or amortization.” It appears Norvell added the depreciation claimed by the husband during each respective tax year to the net income for that tax year.

. Norvell testified that the husband’s 2008 income information had not been included in his calculation.

. The record from Shewbart, supra, has been incorporated into the record in this appeal.

. We note that the trial court actually rounded up from $27,993 to derive its $28,000 award. Nothing in our opinion should be read as preventing the trial court from similarly rounding up to $30,000 on remand, if it deems it equitable to do so. The trial court also may use its discretion as to whether it will increase the monthly installment amounts or extend the installment period in order to account for the increase. We do not address the wife’s argument that the trial court erred in allowing the husband to pay her share of the value of the business in equal installments over a period of 70 months, which is raised for the first time in her reply brief. See Lloyd Noland Hosp. v. Durham, 906 So.2d 157, 173 (Ala.2005) ("It is a well-established principle of appellate review that we will not consider an issue not raised in an appellant’s initial brief, but raised only in the reply brief.”).