MOORE, Judge,
concurring in part, concurring in the result in part, and dissenting in part.
I concur in parts II., III.A., and IV. of the main opinion, and I concur in the result as to part I. As to part III.B., I respectfully dissent.
I.
As I read the brief filed with this court by J.D.A. (“the husband”), he does not complain that the Montgomery Circuit Court (“the trial court”) improperly divided the marital estate. The husband instead argues that the trial court exceeded its discretion in awarding A.B.A. (“the wife”) $10,000 in monthly periodic alimony in addition to the property she received. In that regard, the husband concedes that the wife is entitled to alimony, but he maintains that, based on the evidence, the trial court should have limited its award to six years of rehabilitative alimony at approximately $6,000 per month.
The husband mainly asserts that the wife did not prove a need for periodic alimony in the amount of $10,000 per month. In order to establish a need for periodic alimony, the petitioning spouse must “show[ ] that without such financial support he or she will be unable to maintain the parties’ former marital lifestyle.” Shewbart v. Shewbart, 64 So.3d 1080, 1087 (Ala.Civ.App.2010). Naturally, to meet that standard, the petitioning spouse must first prove the marital standard of living and the costs to the parties of maintaining that station in life. 64 So.3d at 1088.
The marital standard of living refers to the manner in which the parties had become accustomed to living during the marriage. Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000). Obviously, during a lengthy marriage, a couple’s standard of living varies, particularly as one or both spouses progress in their careers and achieve higher earnings. In assessing the marital standard of living, a trial court should consider the period leading up to the divorce if that period accurately reflects the manner in which the parties would have been expected to live had they continued to be married. See generally Pickett v. Pickett, 723 So.2d 71 (Ala.Civ.App.1998) (plurality) (holding that wife, who had been primary wage earner for first 10 years of the parties’ marriage, had received inadequate alimony to sustain the luxurious standard of living established during the last 6 years of the marriage after husband became a physician).
In this case, the evidence shows that, in 2003, the parties moved to Montgomery, where the husband became employed as a radiologist. After working for two years at $300,000 per year, the husband became a partner in a radiology group earning a base salary of $400,000 per year, along with dividends and bonuses ranging from $60,000 to $291,000 per year. The parties *621 moved into an 85-year-old, 4,200-square-foot house that they substantially renovated and furnished -with antiques. The parties owned several automobiles. They often ate out at restaurants, employed yard workers, and routinely vacationed several times per year. In addition, they saved substantial amounts of money for their retirement. The evidence fully sustains a finding that the parties enjoyed a fairly affluent marital standard of living.
The wife presented evidence indicating that, in order to maintain that standard of living, she would need $11,731 per month in periodic alimony. The financial expert who testified for the wife based that estimate on financial documents evidencing the actual spending by the family for several years preceding the trial. The main opinion considers that estimate to be “wholly unreliable in determining [the wife’s] reasonable and necessary living expenses” now that she has purchased a smaller home and the parties’ older daughter has moved away to college. 142 So.3d at 614. That statement assumes that periodic alimony should be awarded based on the reasonable amount necessary to sustain an ex-spouse according to his or her postmarital lifestyle. That is not the law. Periodic alimony is intended as financial aid to enable an ex-spouse to enjoy the standard of living as it existed during the marriage, i.e., the “economic status quo,” Orr v. Orr, 374 So.2d 895, 897 (Ala.Civ. App.1979). Thus, the mere fact that the wife’s claim for periodic alimony exceeds her current living expenses does not, in and of itself, render her claim excessive. I believe the financial expert for the wife testified to a reasonable estimate of the costs- of maintaining the former marital standard of living based on the financial information provided.
That said, just because a spouse has established a reasonable estimate as to the costs of maintaining the former marital standard of living does not mean that the spouse is automatically entitled to that amount. The petitioning spouse must further
“establish his or her inability to achieve that same standard of living through the use of his or her own individual assets, including his or her own separate estate, the marital property received as part of any settlement or property division, and his or her own wage-earning capacity, ... with the last factor taking into account the age, health, education, and work experience of the petitioning spouse as well as prevailing economic conditions, ... and any rehabilitative alimony or other benefits that will assist the petitioning spouse in obtaining and maintaining gainful employment.”
Shewbart, 64 So.3d at 1088.
In calculating the monthly estimate for alimony needed by the wife, the wife’s financial expert did not fully consider the wife’s estate or her earning capacity. The wife received $580,500 in assets in the divorce judgment. She used $200,000, part of the proceeds from the sale of the marital home, as a down payment on a townhouse. Excluding the down payment, the wife still had $268,500 left in liquid assets and $112,000 in retirement accounts. The wife’s financial expert did not account for any of those assets when assessing the wife’s financial needs. The wife’s financial expert also did not reduce the estimate to account for the fact that the wife was only 43 years old at the time of the divorce and was capable of earning as much as $48,000 per year as a teacher.[8]
*622 The trial court, however, was required to consider those factors when assessing the ability of the wife to maintain the former marital standard of living. See Huggins v. Huggins, 57 Ala.App. 691, 695, 331 So.2d 704, 707 (Ala.Civ.App.1976) (“[T]he sufficiency of the wife’s estate is a necessary element in the trial court’s determination regarding alimony.”); and Stone v. Stone, 26 So.3d 1232, 1236 (Ala. Civ.App.2009) (“In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property.”). The trial court obviously considered some of those factors when it awarded the wife less periodic alimony than she requested, but the evidence indicates that the award should have been even lower in order to account for the significant assets the wife received in the divorce as well as her earning capacity, both of which she could rely upon in order to help her maintain the former marital standard of living. Shewbart, 64 So.3d at 1088 (“If the use of his or her assets and wage-earning capacity allows the petitioning spouse to routinely meet only part of the financial costs associated with maintaining the parties’ former marital standard of living, the petitioning spouse has proven a need for additional support and maintenance that is measured by that shortfall”).
For those reasons, and due to the financial impact of the award on the husband,[9]1 believe the trial court exceeded its discretion in awarding the wife $10,000 in monthly periodic alimony. I do not, however, agree with the husband that the wife should have been awarded rehabilitative alimony of approximately $6,000 per month for only six years. Even assuming that the wife returns to work full time as a teacher at the end of six years, as the husband maintains she should be able to do, the wife’s earnings, when coupled with the assets she received in the divorce, would still not be sufficient to maintain the former marital standard of living. See Shewbart, 64 So.3d at 1088 (holding that spouse has a need for periodic alimony when rehabilitative alimony does not fully enable spouse to maintain marital standard of living). I would remand the case for the trial court to award a more equitable amount of periodic alimony, but not for the limited time the husband advocates.
II.
The husband argues that the trial court erred in requiring him to pay the automobile expenses associated with his minor daughter, because, he says, Rule 32, Ala. R. Jud. Admin., does not authorize such extraordinary expenses. Specifically, the husband argues that, having established a general child-support award of $3,900 per *623 month for the minor children, the trial court could not order additional child support consisting of automobile expenses because Rule 32(C)(4), Ala. R. Jud. Admin., allows only extraordinary medical, dental, and educational expenses, categories in which the automobile expenses do not fall.
Generally speaking, a trial court determines the “total child-support obligation” by reference to the schedule attached as an appendix to Rule 32 and by applying the formulas set out in Rule 32(C) (1) — (3). Once the trial court has established the total child-support obligation, under Rule 32(C)(4) a trial court may order “additional awards for extraordinary medical, dental, and educational expenses” if the parties agree or the trial court finds such an additional award to be in the child’s best interests and expresses its reasons in writing. Thus, an award of monthly child support produced by the guidelines presumably covers all the expenses necessary for the support of a child, except for extraordinary medical, dental, and educational expenses. A trial court cannot award an additional amount for other expenses because that award would be duplicative of the “total child-support obligation.” See Pickering v. Pickering, 314 S.W.3d 822, 838 (Mo.Ct. App.2010) (trial court erred in ordering father to pay child’s cellular-telephone expenses because those expenses presumably were included in general child-support award and did not qualify as extraordinary expenses under Missouri definition, stating that “an award of extraordinary expenses must not duplicate ordinary living expenses”).
However, when the combined adjusted gross income of the parents exceeds the uppermost limits of the child-support schedule, Rule 32(C) does not apply.[10] Derie v. Derie, 689 So.2d 142, 145 (Ala.Civ. App.1996).
“When the combined adjusted gross income exceeds the uppermost limit of the child support schedule, the amount of child support awarded must rationally relate to the reasonable and necessary needs of the child, taking into account the lifestyle to which the child was accustomed and the standard of living the child enjoyed before the divorce, and must reasonably relate to the obligor’s ability to pay for those needs. [Anonymous v. Anonymous, 617 So.2d 694, 697 (Ala.Civ.App.1993) ].”
Dyas v. Dyas, 683 So.2d 971, 973-74 (Ala. Civ.App.1995) (footnote omitted). In such cases, a trial court does not establish a “total child-support obligation” based on the Rule 32 schedule to which only extraordinary medical, dental, and educational expenses may be added. Rather, the trial court awards child support based primarily on the amount the children of the marriage need in order to maintain the former marital standard of living.
In determining child support in cases in which the parents’ combined adjusted gross income exceeds the uppermost limits of the guidelines, the trial court must consider all the evidence regarding the former marital standard of living, not just the costs associated with necessaries, such as food, shelter, and clothing. See, e.g., *624 Tompkins v. Tompkins, 843 So.2d 759 (Ala.Civ.App.2002) (trial court could consider costs of continuing horseback-riding, gymnastics, and dance lessons and use of parents’ two vacation homes when awarding child support outside the guidelines). In such cases, a trial court is not limited to awarding only those “extraordinary” expenses outlined in Rule 32(C)(4). In Wagner v. Wagner, 989 So.2d 572 (Ala.Civ.App. 2008), this court decided that a trial court had not erred in ordering a father to pay $227.50 per month for automobile insurance, fuel, and maintenance as part of a postminority-educational-support award under Ex parte Bayliss, 550 So.2d 986 (Ala.1989).[11] Notably, Rule 32 does not apply to Bayliss cases, see Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App.1990), which, like in cases in which the parents’ income exceeds the uppermost limits of the guidelines, support is based on the marital standard of living, the needs of the child, and the parents’ ability to pay. Id. Therefore, when Rule 32 does not apply, a trial court can order automobile expenses for a child as a component of child support if those expenses had been borne by the parents during the marriage so that the child has become accustomed to those payments as a part of the marital standard of living.
In this case, the trial court, by ordering the payment of automobile expenses for the younger daughter, impliedly found that those payments fell within the child’s marital standard of living, that she would continue to need those payments, and that the husband could afford to pay those expenses. See Kelly v. Kelly, 981 So.2d 423, 426 (Ala.Civ.App.2007) (appellate court will assume trial court made necessary findings of fact to support its child support determination). The husband does not argue that the evidence fails to support those findings. The husband also does not complain that the award of automobile expenses duplicates part of the $3,900 general child-support award. The husband argues only that such an award cannot be made under Rule 32(C)(4) and that, even if it could, the trial court did not comply with the procedural aspects of Rule 32(C)(4) by expressing in writing its reason for the award. Because I conclude that Rule 32(C)(4) does not apply, I find no basis for reversing that aspect of the judgment; therefore, I respectfully dissent as to this issue.
THOMPSON, P.J., concurs.

. The wife testified that she did not intend to work after the divorce, in part so that she could focus on raising the children, but also because she had become accustomed to act *622 ing as a homemaker. However, the evidence showed that the wife had taught school for many years when the children were younger and, presumably, needed more care and attention. The wife had allowed her teaching certificate to lapse, but the evidence indicates that she could regain it with a year of course work, which she should be able to accomplish, given her lack of any physical or other disability. Based on that evidence, it is undisputed that the wife has the capacity to earn wages as a teacher.

. I do not believe that the trial court would be in error for considering the bonuses earned by the husband when calculating his ability to pay periodic alimony, as the main opinion implies. 142 So.3d at 610. However, I do agree that the amount of the periodic-alimony award, when considered along with the other obligations the husband incurred in tire divorce judgment, severely impacts his ability to maintain the marital standard of living.

. The main opinion cites only McGowin v. McGowin, 991 So.2d 735 (Ala.Civ.App.2008), to support its conclusion that Rule 32(C)(4) applies to this case. McGowin is a plurality opinion whose reasoning has only questionable precedential value at best. Ex parte Discount Foods, Inc., 789 So.2d 842, 845 (Ala. 2001). Moreover, the issue in McGowin was the sufficiency of the child-support award in light of the father’s income, and any statement regarding the applicability of Rule 32(C)(4) was dicta. McGowin does not overrule the multitude of cases holding that Rule 32(C) does not apply when calculating child support for affluent parents.

. The trial court in Wagner evidently reasoned that those expenses were necessary and related to the child’s traveling to and from college, which would make those expenses, at least indirectly, educational expenses. However, automobile expenses need not be related only to travel to and from school to be awarded in non -Bayliss cases when Rule 32 does not apply because, in such cases, a trial court is not limited to awarding educational expenses under Rule 32(C)(4) or Bayliss.