MOORE, Judge.
Beverly Renee Shewbart (“the former wife”) appeals from a judgment of the Franklin Circuit Court (“the trial court”) denying her petition for an award of periodic alimony from John Michael Shewbart (“the former husband”). We reverse.

Background

The parties previously have been before this court. See Shewbart v. Shewbart, 19 So.3d 223 (Ala.Civ.App.2009) (“Shewbart I”); and Shewbart v. Shewbart, 64 So.3d 1080 (Ala.Civ.App.2010) (“Shewbart II”). In Shewbart I, this court affirmed the trial court’s judgment divorcing the parties and awarding them joint custody of their minor child; we reversed, however, the trial court’s property division and remanded the cause for the trial court to determine the fair-market value of “Swamp John’s,” a sole proprietorship operated by the former husband (“the sole proprietorship”) and, based on that valuation, to make an equitable division of the marital property and to determine whether an award of periodic alimony to the former wife was appropriate. 19 So.3d at 232-33.
On remand, the trial court received additional ore tenus evidence and, based on that evidence, assigned a value to the sole proprietorship, awarded the former wife $34,993 as her one-half interest in the sole proprietorship, and ordered the former husband to pay the former wife for that interest in 70 installments of $400 per month. The former wife again appealed.
This court reversed the trial court’s property division because of a mathematical error, but we affirmed its denial of the former wife’s request for periodic alimony. 64 So.3d at 1090-91. Although this court concluded that the former wife had established a need for as much as $1,600 per month in financial assistance, this court also concluded that the former wife had failed to establish that the former husband had the financial ability to pay periodic alimony to her, a showing that is necessary to support such an award. Id. at 1090-91. We, however, reversed the trial court’s judgment for failing to reserve the issue of periodic alimony. Id. at 1091.
On June 24, 2011, the former wife filed a petition again seeking an award of periodic alimony. She asserted that she was no longer working and that her only income was the $400 monthly payment she receives from the former husband pursuant to the trial court’s property division. The former husband answered the petition and filed a counterpetition, seeking to compel the sale of the former marital residence, in which the former wife had continued to live, and to compel the sale at public auction of the contents of that residence.
On April 13, 2012, the former husband moved the trial court to approve an offer to purchase the former marital residence for $75,000 and all the contents of that residence for $5,000. On May 31, 2012, the trial court granted the former husband’s motion and approved the offer.
The trial court conducted an ore tenus hearing on December 3, 2012, and, on December 13, 2012, the trial court entered a judgment denying the former wife’s request for an award of periodic alimony. In *611 its judgment, the trial court stated, in pertinent part:
“2. The [former wife] filed a petition asking the Court to award her alimony based on her worsening economic condition and the improved economic condition of the [former husband].
“3. Testimony indicates that the [former wife] quit her job about a year ago. She was working with her brother at that time. The [former wife] has been unemployed since that time. The [former wife] maintains that she is disabled. However, she has not filed for disability with the Social Security Administration. The [former wife] states that she has plans to do so, but has had trouble understanding the forms and plans to go to the Social Security Office for help.
“4. The [former wife] is now living in a government subsidized apartment. The [former wife] has received one-half the proceeds from the sale of the marital home. She resided in the marital residence until the sale of the residence after the parties’ daughter reached majority age.
“5. Testimony indicates that the [former husband] is still self-employed in the restaurant business. His income is consistent with the amount at the time of the divorce trial.
“6. The Court is not inclined to award alimony at this time based on the [former wife] terminating her employment and taking no steps to apply for Social Security disability. The [former wife] very well may be disabled but is taking no steps at this time to pursue the matter.
“It is therefore ORDERED that the requested relief is DENIED. The Court retains jurisdiction to award periodic alimony in the future. The [former wife] needs to take steps to either find employment or pursue a disability claim. The Court will be in a better position to examine the true economic condition of the parties if the [former wife] does so.”
The former wife timely filed her notice of appeal.
The pertinent evidence presented at the December 3, 2012, hearing established the following. The former wife testified that, as of July 2010, she was no longer employed. According to the former wife, before that time she had been working as a secretary for her brother, but, she testified, “it got to be ... only temporary, and then he’s retiring,” and, she testified, she could no longer drive the two-hour round trip to and from that place of employment.
According to the former wife, she had looked for employment elsewhere; she stated that she had applied at nursing homes and various retail stores. She testified, however, that she been unsuccessful in locating employment, which she attributed to her health issues and her lack of training and experience. The former wife testified that she is restricted in her physical abilities due to an unsuccessful back surgery, arthritis in both knees, and torn ligaments in her left knee, which, she testified, she had sustained in 2010. She testified that, after disclosing those limitations on her employment applications, she had not received a single call back for an interview.
The former wife testified that she might qualify for Social Security disability income. According to the former wife, four to five months before the December 2012 hearing, she had begun an online application for Social Security disability benefits, but, because she had not understood the questions, she had not completed that application. As a result, the former wife *612 testified that, at the time of the December 2012 hearing, her sole income was the $400 monthly payment she was receiving from the former husband for her one-half interest in the sole proprietorship. She acknowledged that she had qualified for food stamps in 2011 but that she had been “too ashamed” to “go back and get them.”
The former wife testified that, after the parties’ child had reached the age of majority in April 2010, the former wife had continued to live in the marital residence; the former wife admitted that she had not paid the mortgage payments or any of the utility expenses while she had lived there. She testified that she had moved out of that residence in June 2012, after the trial court had ordered the residence and its contents to be sold. The former wife acknowledged that she had received one-half of the net proceeds from the sale of the residence, i.e., $10,051.50, and that she had received all the proceeds from the sale of the contents of that residence, i.e., $5,000.[1]
The former wife testified that, after moving out of the marital residence, she had lived with her mother and another family member until August 2012, when she had moved into government-subsidized housing, where she remained at the time of the December 2012 hearing. According to- the former wife, her rent is $30 per month because it is calculated as a percentage of her monthly income, which is $400.
The former wife testified that she has no health insurance, and she admitted that she had not applied for Medicaid coverage. She testified that she did not think she would qualify for Medicaid coverage because she had not yet been found to be disabled. The former wife testified that she requires prescribed medications for her health conditions, which include attention deficit hyperactivity disorder, bipolar disorder, depression, irritable bowel syndrome, and blood pressure and thyroid problems. According to the former wife, her regular maintenance prescriptions would cost her approximately $300 per month, but, she testified, she did not have sufficient income to pay for those medications while also covering her other monthly expenses.
The former wife presented an itemized budget of her projected monthly expenses totaling $1,785. That amount included an increased amount for rent;[2] prescription medications and fees for doctor visits; food; utilities; fuel, liability insurance, and maintenance on her 2003 automobile; expenses associated with dental work that the former wife indicated she needs; a monthly payment to her lawyer toward her outstanding legal fees; and other typical living expenses. The former wife testified that she had been using the proceeds she had received from the sale of the marital residence and from the sale of the contents of that residence to meet her monthly expenses. She also requested that the $400 she receives each month for her interest in the sole proprietorship not be credited toward her monthly expenses because those monthly payments would terminate in the near future.
The former husband’s testimony established that he continues to live rent-free in the shop behind his parents’ home and that he was living there with his new wife and *613 stepson. The former husband testified that he had purchased other property on which he and his new wife intended to live but that that property was under renovations at the time of the December 3, 2012, hearing. The former husband also testified that his business interests were organized basically as they had been at the time of the previous hearings. According to the former husband, the sole proprietorship provided his primary source of income.
The former husband testified that he does not pay himself a salary out of the income generated by the sole proprietorship but that he had paid his personal expenses from that income and had withdrawn cash from the sole proprietorship as needed. He also acknowledged that he has one business checking account for the sole proprietorship, two personal checking accounts in his name alone, and another checking account held jointly with the parties’ adult child, who is married and attending college. According to the former husband, all of those accounts were funded almost exclusively from the operations of the sole proprietorship.
The former husband’s 2010 federal income-tax return indicates that the sole proprietorship had gross receipts of $1,167,470 in 2010 but that, after deducting the cost of goods, the sole proprietorship’s net income had been $311,356. After deducting depreciation and tax credits, the former husband’s tax return indicated that his taxable income for 2010 had been $49,911.[3] In 2011, the former husband had reported higher gross receipts of $1,194,000 but a lower total taxable income of $42,343.
The former husband also testified that he had begun operating a new business, i.e., “John Shewbart Backhoe and Landscaping,” in 2010. He testified that “I’ve got some construction equipment we use mostly on our own property, but I do work ... for other people a little bit.” As to that business, the former husband had claimed income in 2010 of $3,700 and depreciation of his equipment in the amount of $18,286, for a net loss of $16,156, which was offset against his combined net income. In 2011, the former husband had reported $1,600 in income from the backhoe business, but after calculating depreciation and other expenses, the former husband had reported a net loss of $10,361. That loss also had been offset against his 2011 combined net income.
Also introduced into evidence was a “personal financial statement” that the former husband had submitted to a bank in June 2011 in support of a loan application. On that statement, the former husband had indicated that, as of 2011, his net worth was $423,137 while his liabilities totaled only $72,347. On that statement, the former husband had listed the following: 2010 annual income of $59,376; the value of his then real-estate holdings as $382,-000;[4] $27,484 as the amount of “cash on hand and in banks”; personal property valued at $76,000; “contents” valued at $10,000; and secured and unsecured debts of $72,347, including the $51,434 that had been owed on the marital residence, which was subsequently sold. The former husband testified that the purpose of the $41,000 loan he had been seeking was to purchase a catering truck, “to keep [him] in business and [to] keep [the parties’ child] in college and [to] pay bills.”
*614 The former husband also acknowledged that he had sold timber in January 2010. The former husband testified that, as a result of that sale, he had been paid $96,000. According to the former husband, he had used the proceeds from that sale to assist with the college expenses of the parties’ married, adult child and to purchase the equipment he had been using in the backhoe business. The former husband testified that the balance of those proceeds remained in one of his checking accounts.
The former husband also acknowledged that he had taken cash receipts from his businesses and deposited the cash into one or more of his personal checking accounts. The bank records offered into evidence by the former wife and acknowledged by the former husband established that, in some months, he had deposited into his personal account more than $6,900 in cash. The former husband acknowledged that, in 2011, he had deposited a total of $36,551.81 in cash receipts from his businesses into one of his personal checking accounts and that he had deposited $13,500 in cash receipts from his businesses into his other personal account.
The former husband also acknowledged that, during the first six months of 2011, he had deposited $7,750 into the bank account held jointly by him and the parties’ adult, married child; he testified that he deposited, on average, $1,300 per month into that joint account for the child’s use and that those funds had come from his businesses’ cash receipts, as had the funds deposited into his other accounts. Finally, the former husband admitted that, before the marital residence had been sold, he had paid some of the monthly mortgage payments owed on the marital residence directly from the sole proprietorship’s business account, that a portion of the charges shown on his credit cards were for his personal expenses, and that the sole proprietorship had paid the amounts due on those accounts. The former husband admitted that payments made out of a business account for his personal expenses or cash taken from the business and given to the parties’ child or spent for his personal expenses should be treated as income to him.

Analysis

The former wife asserts on appeal that the trial court exceeded its discretion in denying her petition for periodic alimony. We agree.
In order to obtain periodic alimony, the former wife first had to establish that a material change in circumstances had occurred since the original reservation of the right to award that benefit. See Crenshaw v. Crenshaw, 816 So.2d 1046, 1048 (Ala.Civ.App.2001). “The obligation to pay periodic alimony may be modified when there has been a material change in the financial or economic needs of the payee spouse and the ability of the payor spouse to respond to those needs.” McKenzie v. McKenzie, 568 So.2d 819, 820-21 (Ala.Civ.App.1990). The burden of proving the existence of a material change in circumstances is upon the moving party. Boudreaux v. Boudreaux, 550 So.2d 1030, 1031 (Ala.Civ.App.1989). The decision to modify periodic alimony lies within the discretion of the trial court and will not be set aside on appeal unless a palpable abuse of that discretion is shown. Thomas v. Thomas, 532 So.2d 1043, 1044 (Ala.Civ.App.1988).
The evidence presented by the former wife proved that her financial condition had worsened since the last hearing relating to her claim for periodic alimony. The former wife testified that, after the last hearing, she had lost her job, had been unable to secure other employment, had moved out of the marital residence where she had been living rent-free, had acquired *615 housing with associated rental costs, and had been living solely off the $400-per-month property settlement she received in the divorce. The former wife further presented evidence indicating that the former husband’s financial condition had substantially improved since the time of the last hearing, when he was earning $276 per week. The evidence showed that, after the last hearing, the husband had deposited into his personal accounts a minimum of $57,801.81 from the cash receipts of his sole proprietorship and new backhoe business, or an average of $4,816.82 per month or $1,111.57 per week. At the same time, he had been relieved of all costs associated with the marital residence, had sold timber for a profit of $96,000, had invested in a new business thereby creating additional tax benefits for himself, and had acquired real property that he intends to use as his personal residence after renovations. The foregoing evidence established that a material change in circumstances had occurred since the trial court had reserved the right to award periodic alimony in its last judgment.
A trial court is not, however, required to modify alimony because of a change in the circumstances of the parties. Ex parte Ederer, 900 So.2d 424, 426 (Ala.2004). When deciding whether to modify alimony, a trial court should also consider the earning capacity of each spouse, the payee spouse’s need for alimony, the payor spouse’s ability to pay alimony, and each spouse’s estate. Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala.Civ.App.1995). “In weighing those factors, a trial court essentially determines whether the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet.” Shewbart II, 64 So.3d at 1087.
The trial court denied the former wife’s claim for periodic alimony for two reasons. First, the trial court determined that the former wife had voluntarily quit her job and had failed to secure alternative employment. Accepting those findings of fact as conclusive on appeal, see Ex parte Ederer, supra, they do not support the denial of the former wife’s claim for periodic alimony. In Shewbart II, this court concluded that, due to her health problems and lack of training and work experience, the undisputed evidence proved that the former wife had a limited earning capacity of approximately $800 per month. 64 So.3d at 1090. At the December 2012 hearing, the former husband did not present any new or different evidence to substantiate his subjective belief that the former wife could earn more. Under the law-of-the-case doctrine, our judgment as to the extent of the former wife’s earning capacity remains unchanged. Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987) (“Under the doctrine of the ‘law of the case,’ whatever is once established between the same parties in the same case continues to be the law of that ease, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.”). Although the former wife may have voluntarily separated from her employment, that fact does not alter the fact that she could work only part-time and earn approximately $800 per month if employed at her fullest earning capacity. At that rate, as we found in Shewbart II, the former wife still would not be able to earn sufficient income to enjoy her former marital standard of living. 64 So.3d at 1090. Thus, with or without employment, the former wife still proved a need for financial support.
Second, the trial court faulted the former wife for failing to apply for Social *616 Security disability benefits. In Thomas v. Thomas, 406 So.2d 939, 941 (Ala.Civ.App.1981), this court noted that •
“the duty ... to provide [periodic alimony] .... is much more binding than a mere contractual obligation and the duty is not only [owed] to [the recipient former spouse], but also [to] the public lest [the former spouse] become a charge upon it.”
That excerpt illustrates that periodic alimony is intended, at least in part, to provide support for a former spouse in order to prevent the need for government assistance. When a paying spouse has the ability to meet the financial needs of a dependent former spouse, the law places that obligation upon the paying spouse, not the public. Thus, the failure of the former wife to secure Social Security disability benefits does not present a sound justification for denying her claim for periodic alimony.
The former husband admitted that, based on his present income, he had been able to purchase a new home in which he intended to reside with his new family and to financially contribute $1,300 per month to the college education of his adult, married child, to whom he owes no legal obligation. That evidence, along with the evidence relating to his current income, shows, without dispute, that the former husband has the present ability to pay the former wife some amount of periodic alimony. “The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the [recipient spouse] are shown to merit an award and the [payor spouse] has the ability to pay.” Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994).
Because the former wife established a need for financial support and the former husband’s financial ability to contribute to her support, we conclude that the trial court exceeded its discretion in denying her petition for periodic alimony. We, therefore, reverse the trial court’s judgment and remand the cause to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. Out of the proceeds, the former wife testified that she had paid $3,651.50 to her attorney. The former wife’s testimony established that she has an outstanding balance due her attorney in the amount of $19,648.91 and that she is paying $150 per month on that balance.

. The former wife testified that, if she received periodic alimony, her government-subsidized rent would increase based on her total monthly income but that the maximum she would be required to pay would be $240 per month.

. The evidence established differing amounts of net income for the former husband in 2010. The testimony for his net income in 2010 ranged from $49,000 to $60,000.

. On that personal financial statement, the former husband identified four parcels of real property in which he held an interest.