331 So.2d 699

**George W. CRANE**

**v.**

**Frances Watts CRANE.**

**Civ. 714.**

Court of Civil Appeals of Alabama.

May 5, 1976.

E. Farley Moody II, Birmingham, for appellant.

**686**

W. S. Pritchard, Jr., Birmingham, for appellee.

BRADLEY, Judge.

This is an appeal by the husband from a property division contained in a divorce decree. The divorce was granted on the ground of incompatibility by the Circuit Court of Jefferson County, subsequent to a hearing at which oral testimony was taken.

The decree granted the wife the family residence, originally costing $24,750, and all furniture, fixtures and equipment located therein, subject to the oustanding mortgage of $8,234.78, and a 1969 Oldsmobile. The husband was awarded $3,000 cash to be paid by the wife for the husband's interest in the property.

In addition the parties kept some personal property not disposed of by the decree: the wife kept $2,000 in a personal checking account and $2,500 in a savings account; the husband kept $800 in a checking account

and a Buick automobile. In addition the husband kept two insurance policies worth $6,000; however, the record is not clear as to whether this is the face or cash value of the policies.

On appeal the husband argues that the award is inequitable in that the wife received a disproportionately large share of the property in a no-fault divorce.

■ A division of property in a divorce proceeding does not have to be equal; it should be equitable, *Hicks v. Hicks,* 52 Ala.App. 586, 296 So.2d 180. Examination of the record convinces us that the trial court's decree was not lacking in equity.

Since the outset of the marriage, the parties have maintained a joint checking account. The parties deposited into this account substantially all of their net earnings, except on certain occasions described below. Out of this joint checking account were paid the mortgage, premiums on insurance policies, household expenses, and personal expenses of the parties. The inference to be drawn from the testimony in the record is that, for the most part, this joint checking account was the conduit through which the parties translated their wages and earnings into the accumulated property disposed of by the decree now on appeal.

Contributions of funds to the joint account have, with few exceptions, been commensurate with the respective incomes earned by the parties at their jobs. The wife has worked constantly throughout the years of marriage, except for two years in the early 1950's when the only child was born. The husband, a salesman, worked regularly until 1971. In that year the company he worked for changed ownership and he was terminated in the resultant general shake-up by the new management. Between 1971 and 1974 he worked intermittently for several employers. Since September 1974 he has not worked at all. No income records are in evidence for the pre-1971 period. However, documentary evidence shows that since 1971 the wife has

earned $33,432.02 while the husband's net earnings were $15,017.58. During two years of this period the wife deposited $2,500 of her earnings into a personal savings account not shared with the husband. It is her testimony that, other than this, she deposited the entire amount of her income into the joint account. The husband testified without elaboration that sometimes the wife did not so deposit her entire income. The husband further testified that he deposited all of his net earnings into the joint account.

An itemized list of deposits and withdrawals from the joint account for the year 1974 shows that the husband deposited $2,767.74 while he withdrew $3,982.96. The withdrawals were primarily for personal expenses including dues at Green Valley Country Club and a payment of $587.00 to the husband's mother. None of the withdrawals made by the husband were mortgage payments on the family home.

The conclusion which must be drawn from the record is that from 1971 to the present the wife, not the husband, has been the major contributor of funds to the joint account. As noted above, this account provided the revenue which paid for the property accumulated during marriage.

In addition to the approximately $1,200 by which his withdrawals from the checking account exceeded his deposits, the husband cashed in two life insurance policies, the premiums of which were paid out of the joint account. He kept the entire $1,400 proceeds from one policy and deposited the $4,700 received from the other into the joint account. According to the wife the husband used his share of this money for personal and travel expenses. Moreover, the husband has completely retained the two previously referred-to insurance policies in the amount of $6,000.

Although he denied it, this tracing of the income and outlay of funds leads to the inevitable conclusion that the husband has been subsisting in part on his wife's income since 1971. Further, the tenor of the evidence suggests that the husband is not entirely dissatisfied with such an arrangement. Although the loss of his first job in 1971 was due to factors beyond his control, his more recent unemployment was self-imposed: he voluntarily left a position with Ramada Inn. He has never lost a job because of physical disability, and he is physically able to work. Although not having a job since 1974, he was, at the time of the trial in September 1975, not registered with any state or private job-finding agency. He testified that he had scoured the want ads for jobs and contacted numerous prospective employers, but on cross-examination could recall the name of only one firm contacted in either 1974 or 1975.

The husband testified that he went to the Green Valley Country Club three or four times a week. Sometimes he would spend four to five hours at the club. The wife testified that she never attends the Green Valley Country Club. She further testified that the husband has taken several unexplained trips out of town since his unemployment began, and that he is still sleeping when she leaves for work.

On the record before us the trial court would be justified in finding that the husband had voluntarily ceased to be a productive party to the marriage. His expenditures exceeded his income; he was not actively seeking employment, but devoted his time to recreational activities; by cashing in the life insurance policies, he had begun to divert money intended to provide old-age security to gratification of current personal wants. At the same time the wife, who had given birth to and raised to adulthood the child of the marriage, continued to work and devote her earnings to preserving and maintaining the marital property.

It is noteworthy that the wife's income provided the bulk of the money required for the mortgage payments over the past year.

The basis for the husband's appeal is his contention that the house awarded appellee is now worth $49,250, the value testified to by a real estate appraiser. Based upon such an appreciated value, the trial court's award would appear to be somewhat disproportionate, even in light of the striking facts of this case. However, real estate values are an area of inquiry within which the trier of fact is presumed to have some general knowledge to offset expert opinion, *United States v. Goodloe*, 204 Ala. 484, 86 So. 546.

Whether an eighteen year old two-bedroom house originally costing $24,750 would have appreciated to a value of $49,250 at the time of divorce is a matter falling within this area of presumed general knowledge.

In his testimony, the appraiser set forth in detail the factors on which his estimate was based. These included price comparisons with homes in the same part of town, and a computation of replacement value based on an estimate of today's inflated construction costs. The appraiser conceded that his estimates involved judgment calls on his part. The extent to which the actual value of the house is reflected in those judgment calls was for the trier of fact to decide; the appraiser's testimony is not conclusive, *State v. Crawford*, 277 Ala. 568, 173 So.2d 109.

Indulging in the presumption that the trial judge found the value of the house to be nearer to the purchase price of $24,750 than to the appraiser's estimate of $49,250, we do not find inequity in the trial court's award. The wife is required to pay off the outstanding mortgage balance in excess of $8,000, she is to receive no periodic alimony, and she is to pay the husband $3,000 for the net equity remaining in his half interest. Moreover, the husband has already received considerable sums from his wife in terms of day-to-day support over recent years, and in the retention of funds from the cashed-in life insurance.

The trial court's award finds further support in the fact that were it not for the wife's contribution of mortgage payments, the house would have been foreclosed upon sometime ago, and realization of appreciation—if in fact there had been any—would be unlikely.

In *Hicks v. Hicks, supra,* we held that, where the trial court has heard the evidence ore tenus, its decree disposing of the marital property will not be disturbed unless it conflicts with the reasonable inferences from the evidence. There is no such conflict present in the decree on appeal. We therefore affirm the decree of the trial court.

Appellee has also moved for an award of attorney's fees incurred in this appeal. The trial court's decree directed that each party pay their own attorney's fees for the proceedings below. In light of the property award made to appellee in the court below, the request for attorney's fee on appeal is denied.

ATTORNEY'S FEE DENIED.

AFFIRMED.

WRIGHT, P. J., and HOLMES, J., concur.