This is a divorce case.
The husband, C.M. Thomas, filed a complaint for divorce on July 2, 1979 after thirty years of marriage. The trial court issued its divorce decree on January 14, 1980 on the basis of incompatibility. A motion for rehearing was filed by the wife, Rosa Thomas, on January 28, 1980 and was denied. An appeal was timely filed with this court.
The wife contends here that the trial court erred in the property division and in failing to award periodic alimony.
The trial court awarded the wife: (1) the family residence which was valued from $55,000 to $75,000; (2) household furnishings estimated to be worth $10,000; (3) $25,000 alimony in gross; and (4) $750 as an attorney's fee. The husband was required to pay the balance of the mortgage on the house in the amount of $6,500. The trial court did not give the wife periodic alimony nor did it reserve the right to do so in the future.
The evidence shows that Mr. Thomas is fifty-nine years old, is retired from the United States Navy and General Telephone Company and is receiving retirement benefits from both agencies in the total amount *Page 373 
of $672.89 a month. He also received $2,034 in 1978 as net income from a trailer park that he owns and operates. He is in good health. The wife is fifty-four, has a B.S. degree in chemistry and biology from Fordham University and is employed in a local hospital as a medical technician. Her gross annual income is about $15,750. She is in reasonably good health and stated that she desired to work for several more years.
The parties' marriage lasted for thirty years; three children who are now adults were born during the marriage; and there was no misconduct shown on the part of either party.
The wife testified that she had worked during most of the marriage, and she will be eligible for retirement in two years but will have to wait until age sixty-five to receive the benefits which, at the present time, will amount to about $200 per month. Her salary checks were placed in her personal bank account. She did, however, transfer money to the parties' joint account when necessary to pay household bills, and she did pay for some household expenses out of her personal bank account. She also wrote the checks for the household expenses out of the joint account. The wife stated that the husband's maximum contribution to the joint account was $600 per month with the balance of his income going into the trailer court account.
The wife said she received during the marriage an inheritance amounting to $39,000. She contributed $12,000 of this sum to the down-payment on the jointly owned house and lot. The present balance of her inheritance account is $22,579. Her checking account contains $1,300, $1,000 of which came from a credit union loan. The balance of that loan is now $900. She also has $900 in a credit union share account and she owns a 1976 Pontiac debt-free. The household furnishings were valued by her at about $10,000, the bulk of which she paid for from her separate funds.
According to the wife the jointly owned house and lot were valued at $55,000. The property has an outstanding mortgage of about $6,500. She says that the mortgage payments have been made from the joint account. She also said that two lots owned by the parties were sold when the present house was being built and only one-half of the proceeds went in the house building account. She thinks the remainder went into the trailer court account.
The wife valued the trailer court at $175,000 and she valued at $65,000 thirty acres of unimproved land purchased by the husband. She said she never contributed any of her money to the purchase and development of the trailer court nor did she help in any way with its operation and management. Neither did she contribute any money to the purchase of the thirty acres of land. However she did say that all of her earnings went to the upkeep of the family.
The husband's testimony shows that he placed all of his salary checks in the joint account for the payment of the family bills. The wife wrote the checks on this account to pay the bills. He said she placed her salary checks in her personal account and did not pay family bills with any of her money. He did say that the wife bought her car and clothes with her money. Other than the joint account, the husband stated that he had $5,000 in the trailer court account, less than $100 in a personal checking account, about $550 in savings accounts, $259 in a credit union share account, and one hundred shares of General Telephone stock valued at $4,000. He also owns a wrecked 1954 DeSoto automobile and a 1971 Chrysler, a small tractor that is three to four years old, a riding lawn mower purchased in 1979 for $760 that is used at the trailer court, a Coca-Cola dispensing machine that is ten to twelve years old which was purchased for $700 and is used at the trailer court, a portable power generator valued at $450 which is used at the trailer court, a house trailer located at the trailer court in which he lives purchased for $2,100, and a washer-dryer used at the trailer court which was purchased in 1978 for $700.
The husband testified that he purchased the twelve acres that was developed into a trailer court in 1959 for $4,000. He said he borrowed $3,000 from his wife to make the *Page 374 
purchase and paid her back with six percent interest. The gross income from the trailer court in 1978 was about $20,000. Net profit, as shown on his income tax return, was about $2,000.
The husband testified that he had given his children money out of the trailer court account and had used this account to pay other bills. He would not, however, place a value on the trailer court. The property is debt-free.
The husband said he purchased the thirty acres in 1970 for $16,500. The mortgage payments were made from the trailer court account; none were made from the joint account. The property is debt-free at the present time. He values this property at $65,000.
The husband does say that the wife contributed to the purchase of the jointly owned house and lot but that he does not know how much. He says all the money from the sale of the two lots went into the joint account and that he wrote his wife a check for $2,375 as her half of one of the lots. He says he does not know what she did with the money.
As has been said many times before, an alimony award in a divorce case made after an oral hearing is presumed to be correct and will be set aside on appeal only for gross abuse of discretion. Elsevier v. Elsevier, Ala.Civ.App., 355 So.2d 382
(1978). In the instant case the trial court did not award periodic alimony to the wife and we do not find a gross abuse of discretion in its failure to do so. Meyers v. Meyers,55 Ala. App. 697, 318 So.2d 725 (1975).
In determining the amount of alimony to be awarded or whether to make an award at all, the trial court may properly consider the earning ability of the parties, their future prospects, their ages, station in life, duration of the marriage, and the conduct of the parties as relates to the cause of the divorce.Chancellor v. Chancellor, 52 Ala. App. 10, 288 So.2d 794 (1974).
Both parties were employed, with the wife earning about $15,000 a year and the husband receiving not less than $10,000 a year. The husband is retired and the bulk of his income is from retirement resources. Both of them are in good health with good prospects for the future. There was no misconduct shown on the part of either party.
Next the wife says that the trial court erred in the division of property and the award of alimony in gross by taking into consideration, contrary to the provisions of § 30-2-51, Code of Alabama 1975, an inheritance she had received.
Section 30-2-51 provides in part as follows:
 [P]rovided, however, that the judge may not take into consideration any property acquired . . . by inheritance . . . unless the trial judge finds from the evidence that such property, or income produced by such property, has been used regularly for the common benefit of the parties during their marriage.
The trial court's decree contains no finding that the wife's inheritance has been used regularly for the common benefit of the parties during their marriage, and the only evidence in the record showing that the wife had used some of her inheritance for the benefit of the parties was the $12,000 she applied to the purchase of the house and lot. But, this was a one-time occurrence. And, under these circumstances it cannot be said that § 30-2-51 has been violated.
The next issue to be considered is whether the trial court erred in the amount of property and permanent alimony awarded to the wife.
In determining the amount of permanent alimony to be awarded in a divorce case, a trial court is not bound by fixed rules but decides each case on its own peculiar facts. Frazier v.Frazier, 273 Ala. 53, 134 So.2d 205 (1961). Also, a property division is not required to be equal but it does have to be equitable. Crane v. Crane, 57 Ala. App. 685, 331 So.2d 699
(1976). And such awards made after an oral hearing before the trial court are presumed correct and will be set aside only for gross abuse of discretion. Elsevier v. Elsevier, supra. *Page 375 
After a careful examination of the evidence, the pertinent parts of which are set out above, we do not find that the trial court abused its discretion in its division of the assets nor in its award of alimony in gross.
The wife's request for an award of attorney's fee on appeal is denied.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.