THOMAS, Judge.
Natalie Rockett (“the wife”) appeals from a judgment of the Bessemer Division of the Jefferson Circuit Court divorcing her from Craig L. Rockett (“the husband”) insofar as it failed to award her periodic alimony or to reserve the issue of alimony for future consideration.
The parties were married in February 1992. The parties separated in July 2008, and, on March 12, 2009, the husband filed a complaint in the trial court, seeking a divorce from the wife based on incompatibility. The wife answered the husband’s complaint and counterclaimed for a divorce, alleging adultery, abandonment, and incompatibility.
The wife also moved the trial court for pendente lite relief, stating that the parties had reached an agreement on several issues and requesting that the trial court enter a pendente lite award based on the parties’ agreement. The trial court entered a pendente lite order on May 20, 2009. The pendente lite order restrained the parties from harassing, stalking, or threatening each other, and it restrained the parties from contacting or otherwise communicating, directly or indirectly, with each other. The pendente lite order further provided that the wife would have exclusive possession of the marital residence.
On June 5, 2009, the husband moved the trial court for pendente lite relief. In his motion, the husband stated that the parties had been unable to agree on disposition of the marital residence, that neither party desired to possess the marital residence, and that it was in the best interests of the parties to place the marital residence for sale, using the proceeds from the sale to satisfy the outstanding mortgage and dividing any remaining proceeds between the parties. The husband requested that the trial court enter an order requiring the parties to place the marital residence on the market for sale and requiring each party to pay one-half of the monthly mortgage-payment obligation.
On June 19, 2009, the wife moved the trial court for pendente lite alimony. In her motion, the wife alleged that she had been employed until March 2009, when the clothing store where she had worked closed, and that she had been unable to find employment since that time despite her diligent efforts. The wife alleged that she needed financial assistance from the husband and that her only source of income was $250 per week in unemployment-insurance benefits. The wife further alleged that she was unable to pay the mortgage payment or utility bills for the marital residence. On August 13, 2009, the trial court entered a second pendente lite order, requiring the parties to list the marital residence for sale, ordering that any proceeds from the sale of the marital residence be paid to the circuit clerk pending further orders of the trial court, and ordering the husband to make the mortgage payments on the marital residence.
The trial court held a hearing on August 4, 2010, at which the husband and the wife testified. On September 7, 2010, the trial court entered a judgment divorcing the parties. In its judgment, the trial court awarded each party the automobile, clothes, and personal property currently in his or her possession and ordered each party to be responsible for the outstanding debt on the automobile that he or she was awarded. The trial court ordered that the marital residence be sold, with the net proceeds of the sale to be divided between the parties; however, if one of the parties desired to keep the marital residence, the party could notify the other party within *602 60 days and then assume the mortgage. The wife was ordered to vacate the marital residence within 60 days of the entry of the judgment if the husband elected to assume the outstanding mortgage. The trial court further ordered that each party was responsible for any bills in his or her name. The trial court also ordered the husband to pay the wife $6,000 as alimony in gross, payable in 12 monthly payments at $500 per month, awarded the wife $323 as her half interest in the husband’s retirement account, and ordered each party to pay his or her own attorney’s fees.
The wife filed a postjudgment motion on October 7, 2010, in which she argued, among other things, that the trial court should convert its $6,000 alimony-in-gross award to a $500-per-month periodic-alimony award and that the trial court should order the husband to pay the wife’s attorney’s fees. The trial court denied the wife’s postjudgment motion, and the wife subsequently appealed to this court.
The wife argues on appeal that the trial court erred by failing to award her periodic alimony and by not reserving the right to order periodic alimony in the future. We will first address the wife’s argument that the trial court erred in not awarding her periodic alimony.
“The well-established standard of review is that a divorce judgment based on ore tenus evidence is presumed correct. See Robinson v. Robinson, 795 So.2d 729 (Ala.Civ.App.2001). Such a judgment will be reversed only where it is unsupported by the evidence so as to be plainly and palpably wrong. Id. at 733. On appeal the division of property and the award of alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. See O'Neal v. O’Neal, 678 So.2d 161 (Ala.Civ.App.1996). A property division does not have to be equal in order to be equitable based on the particular facts of each case; a determination of what is equitable rests within the sound discretion of the trial court. See Golden v. Golden, 681 So.2d 605 (Ala.Civ.App.1996).”
Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). When reviewing the trial court’s determination regarding alimony, we must also consider its division of the marital estate.
“An award of alimony and the division of marital property are considered together and are matters within the discretion of the trial court. Carter v. Carter, 934 So.2d 406 (Ala.Civ.App.2005) (citing Ex parte Durbin, 818 So.2d 404, 408 (Ala.2001)). Because those matters are interrelated, the entire judgment must be considered in determining whether the trial court exceeded its discretion as to either issue. See [Harmon v.] Harmon, [928 So.2d 295 (Ala.Civ.App.2005) ]. Furthermore, a property division does not have to be equal, but it must be equitable, J.H.F. v. P.S.F., 835 So.2d 1024 (Ala.Civ.App.2002), and it must be ‘supported by the particular facts of the ease,’ Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000). The determination of what is equitable is a matter of discretion for the trial court. See Carter, supra.”
Clements v. Clements, 990 So.2d 383, 390 (Ala.Civ.App.2007). The trial court should consider several factors when determining a party’s need for alimony and when dividing marital property, including “ ‘the length of the marriage, the age and health of the parties, the future employment prospects of the parties, the source, value, and type of property owned, and the standard of living to which the parties have become accustomed during the marriage.’ ” Ex parte Elliott, 782 So.2d 308, *603 311 (Ala.2000) (quoting Nowell v. Nowell, 474 So.2d 1128, 1129 (Ala.Civ.App.1985)).
The husband was 89 years old at the time of trial. He was employed by Alabama Aviation, where he had worked for over 19 years, and he earned approximately $45,000 per year. After the parties separated in July 2008, the husband lived with his parents for approximately one year. The husband then moved in with his girlfriend, with whom he claimed to have begun a relationship only after the parties had separated. The husband testified that his monthly take-home income was $2,692 and that his monthly living expenses totaled $2,548, including the mortgage payment on the marital residence in which the wife was residing, for which he was responsible. The husband also testified that he earned some income from playing in a rock band part-time; however, the husband testified that that income barely covered the expenses associated with the band’s activities.
The wife was 53 years old at the time of trial. The wife had worked in retail, specifically specialty-clothing stores, “off and on” for over 40 years. The wife has a bachelor’s degree in merchandising with a minor in marketing. Her last employer was a specialty-clothing store in Mountain Brook, where she had worked for 18 years; she managed the store and earned an annual salary of $45,000. The store closed in March 2009, leaving the wife unemployed. The wife received unemployment-insurance payments in the amount of $250 per week after she lost her job; her unemployment-insurance payments ended in March 2010. The wife testified that she began looking for work as soon as she found out the store would be closing — around Christmas of 2008. The wife did not find new employment until after she stopped receiving unemployment-insurance payments— in May 2010 — when the wife began working at another specialty-clothing store; at the time of trial, the wife worked there 29 hours per week at a rate of $10 per hour, earning a total of $290 per week. The wife testified that she had looked for additional, part-time work that would not interfere with the hours she was working at her new job; however, she testified that her efforts had been unsuccessful. When asked on cross-examination whether she had attempted to find employment that would afford her more hours per week than the 29 she was currently working, the wife responded that her first obligation was to her current employer because she hoped that her employment there “would turn into something better.” The wife testified that her monthly expenses totaled $1,061; however, the wife also testified that she would need an additional $750 or $800 in order to pay rent once she moved out of the marital residence; at the time of trial, the wife was still living in the marital residence. The wife further testified that she estimated that she would need an additional $1,500 to $2,000 per month on which to live.
The wife testified that she suffered from health problems. Specifically, the wife testified that she had type II diabetes and a mitral-valve issue. The wife testified that stress aggravates her mitral-valve issue and that, when she is under a large amount of stress, her chance of having a stroke or heart attack increases. The wife also testified that she was not taking all the medications that she should have been taking because she could not afford them.
The testimony shows that, until the wife lost her job in March 2009, the parties had similar incomes. The wife has a college degree and a large number of years of experience in the retail-clothing sales industry. Although it is clear from the evidence that the wife cannot presently meet all of her expenses with her current in *604 come, the trial court could have considered the wife’s earning ability, and not just her current income, when deciding whether to award periodic alimony. See Miller v. Miller, 47 So.3d 262, 265 (Ala.Civ.App. 2009) (quoting Ebert v. Ebert, 469 So.2d 615, 618 (Ala.Civ.App.1985)) (“This court has held that the ‘ability to earn, as opposed to actual earnings, is a proper factor to consider’ in deciding an award of periodic alimony.”). See also Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009) (“In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties.... ”).
Moreover, as we noted above, the trial court’s decision whether to award periodic alimony must be considered in light of its division of the marital property. See Clements, 990 So.2d at 390. In this case, the marital residence constituted the parties’ main asset. Both parties testified that they did not want, and could not afford to keep, the marital residence.[1] Thus, the marital residence was ordered sold, with the proceeds of the sale to be split equally between the parties. The husband and the wife each received an automobile titled in his or her name, along with the responsibility to pay the debt associated with the automobile, and whatever' personal property was in that party’s possession. There was little testimony regarding the value of the parties’ personal property, and based on the testimony it does not appear that the parties had any significant savings. The wife was awarded a mutual-fund account that was in her name, which had a balance of $3,500, and was awarded one-half of the present value of the husband’s retirement account. Additionally, the husband was ordered to pay to the wife $6,000 as alimony in gross. From the items for which the trial court had values, it appears that the wife was awarded at least half of the marital estate and, in addition, $6,000 in alimony in gross. Thus, considering the wife’s education, experience, and earning capacity, together with the division of the marital property, including the award of alimony in gross, the trial court could have concluded that it did not need to award the wife periodic alimony.[2] We therefore affirm the trial court’s determination not to award periodic alimony to the wife.
However, we reach a different conclusion with regard to the trial court’s failure to reserve the right to order periodic alimony in the future. “Where the trial court does not grant an award of periodic alimony in the divorce judgment and does not reserve the right to do so upon future consideration, its power to grant it is lost.” *605 Tibbetts v. Tibbetts, 762 So.2d 856, 858 (Ala.Civ.App.1999). Given the circumstances of the parties in this case, we cannot say that the wife would not be entitled to an award of periodic alimony in the future. Therefore, the trial court erred when it failed to reserve the right to order periodic alimony in the future. See Ex parte Yost, 775 So.2d 794, 797 (Ala.2000) (affirming a trial court’s denial of periodic alimony but holding it was error to not reserve the right to order periodic alimony in the future).
We reverse the trial court’s judgment insofar as it failed to reserve the issue of periodic alimony. We affirm the trial court’s judgment in all other respects.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
MOORE, J., concurs in the result, without writing.

. The wife testified that she estimated that the marital residence could sell "in the high $180s,” although the only offer the parties had had on the marital residence had been approximately $170,000. The outstanding balance on the mortgage equaled approximately $163,177.51. Both parties stated that if the marital residence did not sell, it would likely go into foreclosure.

. The wife also argues that the husband's conduct warrants an award of periodic alimony. Although the trial court did not state the grounds on which it based the parties’ divorce, the trial court found that it was undisputed that "the [husband] had engaged in an adulterous affair after the breakup of the marriage and continued up though the day of trial." Although the conduct of the parties is a factor that the trial court may consider when considering an award of periodic alimony and the division of the marital property, see Ex parte Drummond, 785 So.2d 358, 363 (Ala.2000) (quoting Myrick v. Myrick, 714 So.2d 311, 315 (Ala.Civ.App.1998)) (‘"[T]he conduct of the parties and fault with regard to the breakdown of the marriage are factors for the trial court to consider in fashioning its property division.' ”), a party's conduct does not mandate an award of periodic alimony in all cases.