Rel: October 18, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

## CL-2024-0290

_____

## Sharon Smith Gartrell

## v.

## Edward Conant Gartrell, Jr.

## Appeal from Madison Circuit Court
## (DR-21-900713.80)

MOORE, Presiding Judge.

Sharon Smith Gartrell ("the wife") appeals from a judgment entered by the Madison Circuit Court ("the trial court") divorcing her from Edward Conant Gartrell, Jr. ("the husband"), to the extent that the judgment declined to award her alimony and failed to reserve jurisdiction

to award her periodic alimony in the future. We affirm the judgment in part, reverse the judgment in part, and remand the case with instructions.

## Procedural History

The parties have previously appeared before this court. See Gartrell v. Gartrell, [Ms. CL-2023-0288, Jan. 12, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). In Gartrell, we outlined the procedural history of this case as follows:

> "The parties married in 1998 and separated in July or August 2021. On August 24, 2021, the wife filed a complaint for a divorce. On September 24, 2021, the husband answered the complaint and filed a counterclaim for a divorce. At the trial on January 3, 2023, the wife sought, among other things, an award of periodic alimony and an equitable division of the marital property, which, she claimed, included the property held by the Gartrell Family Express Trust ('the trust'), a testamentary trust established for the benefit of the husband by his mother when she died in 2014. The parties presented competing evidence as to whether the husband had regularly used the corpus and income from the trust for the common benefit of the parties during the marriage. The parties also disputed whether the proceeds of the trust could be used by the husband to pay periodic alimony.
>
> "On March 9, 2023, the trial court entered a final judgment that, among other things, declared the husband's interest in the trust to be the separate property of the husband, divided the marital property without including the

trust property, and declined to award the wife periodic alimony. ...

"On April 6, 2023, the wife filed a postjudgment motion seeking to alter or amend the judgment. The trial court denied that motion on April 11, 2023. The wife filed a notice of appeal to this court on May 3, 2023."

___ So. 3d at ___. In Gartrell, we affirmed the divorce judgment to the extent that it determined that the property held by the Gartrell Family Express Trust ("the trust") and the income from the trust were not subject to equitable division. We reversed the divorce judgment insofar as it denied the wife's request for periodic alimony, and we remanded the case with instructions for the trial court to reconsider the wife's periodic-alimony claim in accordance with Ala. Code 1975, § 30-2-57, and to also reconsider the property-division award.

On March 13, 2024, the trial court entered an amended judgment. In the amended judgment, the trial court again denied the wife's claim for periodic alimony, stating, in pertinent part:

"This court has thoroughly reviewed the evidence presented at trial, has considered the credibility of the parties' testimony, and has carefully considered each of the relevant elements in [Ala. Code 1975,] § 30-2-57 and the factors to be considered thereunder. Having done so, the court expressly finds as follows:

"(1) [The wife] has failed to prove that she lacks a separate estate or her separate estate is insufficient to enable her to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) [The wife] has failed to prove the [husband] has the ability to supply those means without undue economic hardship.

"(3) [The wife] has failed to prove that the circumstances of this case make an award of periodic alimony equitable."

Having denied the wife's claim for periodic alimony, the trial court maintained the property division as set out in the divorce judgment.

On April 2, 2024, the wife filed a postjudgment motion. On April 24, 2024, the wife filed a notice of appeal to this court; the wife's appeal was held in abeyance until July 1, 2024, when her postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P.; Rule 4(a)(5), Ala. R. App. P.

<u>Issues</u>

The wife argues on appeal that the trial court erred in denying her request for periodic alimony and, alternatively, in failing to reserve jurisdiction to award her periodic alimony in the future.

4

## Standard of Review

"The award of alimony and the division of property are matters within the sound discretion of the trial court, and the trial court's ruling on those matters will not be reversed except for palpable abuse of that discretion. Wiggins v. Wiggins, 498 So. 2d 853 (Ala. Civ. App. 1986). A trial court's judgment is presumed to be correct if it is supported by the evidence. Nowell v. Nowell, 474 So. 2d 1128 (Ala. Civ. App. 1985); McCoy v. McCoy, 549 So. 2d 53, 57 (Ala. 1989); McCrary v. Butler, 540 So. 2d 736 (Ala. 1989); Jones v. Jones, 470 So. 2d 1207 (Ala. l985); Clark v. Albertville Nursing Home, Inc., 545 So. 2d 9, 12-13 (Ala. 1989); Nunnery v. Nunnery, 558 So. 2d 944 (Ala. Civ. App. 1990). The trial court's judgment is subject to revision if it is plainly or palpably wrong. Seamon v. Seamon, 587 So. 2d 333 (Ala. Civ. App. 1991)."

Ex parte Killough, 728 So. 2d 589, 589-90 (Ala. 1998).

## Facts

The parties married in 1998 and separated in 2021; they have one daughter, who was born in 1998 and for whom the wife primarily provided care during the marriage. Before the parties separated, they lived a middle-class lifestyle. They resided in a home valued at $390,000 at the time of the trial; they had cellular telephones, cable television, Internet service, and streaming services; and they ate out regularly, took vacations, and purchased "nice" clothing. In addition to their regular

household expenses, which included utilities, premiums for health, automobile, and homeowners' insurance, groceries, dry cleaning, and charitable contributions, the wife spent approximately $1,000 per month for discretionary expenses, such as cosmetics, take-out dining, and hair appointments.

During the first part of their marriage, the parties paid all their marital expenses out of a joint bank account in which they both deposited their wages. In 2012, the wife quit working and spent considerable time caring for her and the husband's elderly parents. In 2014, the husband ceased depositing his wages into the joint bank account. Thereafter, the husband paid the routine marital expenses and gave the wife a $1,000 per month allowance to cover her expenses. In 2018, the wife began receiving Social Security retirement benefits, netting $951 per month, which she used to cover her expenses in lieu of receiving the $1,000 per month allowance from the husband.

At the time of the final hearing, the husband was 61 years old. The husband had retired at age 56, after years of working primarily as an insurance-claims adjuster for Nationwide Insurance ("Nationwide"), a job

in which he earned as much as $103,000 per year. He was drawing $2,091 monthly from a Nationwide pension, which was due to expire in August 2023 when he reached 62 years of age; he was also receiving net income of $2,400 monthly from a 401(k) savings plan. The husband testified that he would also become eligible for approximately $1,700 per month in Social Security retirement benefits. He stated that he had not sought employment following his retirement from Nationwide; that he has arthritis and high blood pressure; and that companies are not hiring insurance adjusters of his age.

The husband is the trustee and beneficiary of the trust, which was established in 2014 and had assets totaling approximately $1,600,000 at the time of the final hearing. The terms of the trust require the net income of the trust to be distributed "in such installments as may be convenient to [the beneficiary]." Additionally, the trustee may distribute

> "from the principal of his or her share such amount as from time to time may be necessary to maintain his or her health and reasonable comfort, to support him or her in his or her accustomed manner of living, and to provide for his or her health, medical, dental, hospital and nursing expenses, and expenses of invalidism, taking into account other resources available to him or her."

The trust earned an average annual net income of $55,000. The husband testified that he had not taken regular distributions from the trust and that he had, instead, opted to grow the trust for the benefit of the parties' daughter.

At the time of the final hearing, the wife was 67 years old. When the parties married in January 1998, she was working for Intergraph Corporation ("Intergraph"), but she left that employment after she gave birth to the parties' daughter in September 1998. The wife subsequently worked as a Spanish teacher while also volunteering for a local mental-health board and a local symphony. The wife last earned wages in 2012, at which time she was making $40 per hour teaching Spanish to local hospital workers. According to the wife, she had last inquired about becoming employed in 2016 or 2017, when, she said, she had applied for temporary positions to substitute for employees who would be absent for short periods. She testified that she had not attempted to find employment since that time because she had had issues with her knees and because she needed to be available to assist her father. The wife testified that the husband had encouraged her to take early Social

Security retirement benefits at age 62 and that he had indicated that the parties could live off the income from the trust after he retired; the husband disputed that testimony. After the parties separated, the wife and the parties' daughter began residing with the wife's 102-year-old father in his home in Birmingham. The wife underwent surgeries to replace both of her knees -- the left knee in 2021 and the right knee in 2022. The wife also suffers from a heart condition, anxiety, depression, dysautonomia, hyperthyroidism, high blood pressure, and high cholesterol, a condition for which she regularly takes medication.

The marital assets consisted of the marital residence, various financial accounts, and the parties' personal property. The parties originally resided in a house owned by the wife. In 2000, the wife sold that house and used the approximately $120,000 in proceeds from the sale to make a $100,000 down payment on the marital residence and to improve the condition of the marital residence. At the time of the trial, the mortgage note on the marital residence had been fully paid. After the parties separated in August 2021, the husband continued to reside in the marital residence with a friend. The trial court ordered the parties to sell

the marital residence and to divide the proceeds of the sale equally, while requiring the husband to pay for the maintenance of the marital residence until the sale.

At the time of the final hearing, the husband's 401(k) savings account had a balance of $124,586.04. The wife's 401(k) account from her employment at Intergraph had been rolled over into an individual retirement account ("IRA") at Morgan Stanley, which held a balance of $32,676.89. The husband also had an IRA account valued at approximately $10,000. The parties jointly owned 22 shares of Kentucky River Property Stock that were valued at $1,600 per share. The parties also had a joint bank account and separate bank accounts. The trial court ordered that the marital financial accounts and any personal property be divided evenly between the parties.

The trial court ruled that the trust and the income from the trust was the separate property of the husband. The trial court also ruled that the wife owned a separate estate, consisting of a Synovus money-market account with a balance of $9,000 and a partial remainder interest in her father's Birmingham house. The wife testified that the house was worth

$290,000; that her father had a life estate in the house; and that, upon her father's death, she and her sister would own the house as tenants in common.

The marital debts consisted only of credit-card bills. The trial court ordered the husband to pay the credit-card bills in his name, which had a total balance of $1,824.29, and ordered the wife to pay the credit-card bills in her name, which had a total balance of $2,828.

The wife submitted an exhibit indicating that she would require $4,205 per month to maintain the marital standard of living, which included $1,000 per month for rent or mortgage. The wife explained that, at the time of the final hearing, she was residing rent-free in her father's house and that she was providing her father, who suffered from deteriorating health conditions, full-time care. According to the wife, upon her father's death, she could continue to reside in the house only if she purchased her sister's remainder interest for $145,000; otherwise, she said, she would have to buy or rent a comparable house, leaving her to make payments estimated to be $1,000 per month. The husband submitted an exhibit estimating that his monthly budget, which did not

11

include any amounts for clothing or for rent or a mortgage, would be $2,568.

The trial court divorced the parties on the ground of incompatibility of temperament. The husband asserted that the wife had committed adultery, but the wife denied any act of infidelity, and the husband did not offer any concrete evidence to support his allegation. The husband also testified that the wife was not financially responsible and that he had wanted her to work more during the marriage. The wife testified that the husband had never communicated his desire for her to work more until late in their marriage and that their separation had resulted from a progressive deterioration in their relationship due to the husband's withdrawal from her emotionally and physically. The husband testified that he had decided to divorce the wife once the parties' daughter graduated from college but that he had not informed the wife of his decision. According to the husband, the wife had often threatened him with divorce. The wife testified that, if she had known that the husband planned to divorce her, she would have waited to draw her Social Security retirement benefits to ensure she had greater income to support herself.

The wife testified that it would be "really hard" for her to work given her circumstances and that she could not maintain the marital standard of living using only her Social Security income. The wife requested that the husband pay her $2,200 per month in periodic alimony to assist her financially. The husband testified that he could afford to meet his monthly living expenses and to pay the wife the requested amount of periodic alimony only if he used proceeds from the trust. The husband testified that he should not have to use trust proceeds to help support the wife because she was not an intended beneficiary of the trust, which contained a clause that the principal and income of the trust would not "be liable for to any extent subject to debts, claims or obligations of any kind or nature whatsoever ...."

Analysis

Section 30-2-57 provides, in pertinent part:

"(a) Upon granting a divorce or legal separation, the court shall award either rehabilitative or periodic alimony as provided in subsection (b), if the court expressly finds all of the following:

"(1) A party lacks a separate estate or his or her separate estate is insufficient to enable the party to acquire the ability to preserve, to the

13

extent possible, the economic status quo of the parties as it existed during the marriage.

"(2) The other party has the ability to supply those means without undue economic hardship.

"(3) The circumstances of the case make it equitable."

A trial court may deny a claim for alimony if a spouse fails to prove by a preponderance of the evidence one or more of the factors set forth in § 30-2-57(a). See generally Shewbart v. Shewbart, 64 So. 3d 1080, 1087-89 (Ala. Civ. App. 2010).

The trial court initially found, among other things, that the wife had failed to prove that she lacked a separate estate or that her separate estate was insufficient to enable her to maintain the marital standard of living. For purposes of § 30-2-57(a)(1), the "separate estate" of a dependent spouse includes

"(1) The party's own individual assets.

"(2) The marital property received by or awarded to the party.

"(3) The liabilities of the party following the distribution of marital property.

14

"(4) The party's own wage-earning capacity, taking into account the age, health, education, and work experience of the party as well as the prevailing economic conditions.

"(5) Any benefits that will assist the party in obtaining and maintaining gainful employment.

"....

"(7) Any other factor the court deems equitable under the circumstances of the case."

Ala. Code 1975, § 30-2-57(d). In this case, the wife's individual assets consist of a one-half remainder interest in her father's house, that interest being valued at $145,000, and $9,000 in a money-market account. The trial court awarded the wife one-half of the proceeds of the sale of the marital residence, i.e., $195,000, $62,293.02 from the husband's 401(k) savings plan, $21,338.44 in IRA funds, and $17,600 in stock. The wife also receives $951 per month in Social Security benefits. Because the wife is 67 years old, is retired, see McCarron v. McCarron, 168 So. 3d 68 (Ala. Civ. App. 2014) (holding that fact that party has retired must be considered when assessing wage-earning capacity), and has numerous health problems, the wife has no discernible wage-earning

capacity. The wife further testified that she is the main caretaker of her elderly father, further limiting her employment opportunities.

The wife submitted an exhibit estimating that she would need $4,205 per month to live as she had during the marriage. That exhibit included $1,000 per month for mortgage or rent payments. The wife explained that she could eliminate any rent or mortgage obligation by purchasing her sister's one-half remainder interest in the father's house for $145,000, but, if that plan could not be accomplished, she would have to buy or rent another house at an estimated cost of $1,000 per month. The husband submitted a monthly budget of $2,568 per month that included many of the same items included in the wife's budget, but he did not include any rent or mortgage costs and he did not testify as to the estimated costs for obtaining housing comparable to the marital residence.

The wife posits that, assuming that she receives $195,000 from the sale of the marital residence and that she purchases the sister's remainder interest in the father's house for $145,000, thus eliminating any rent or mortgage obligation, she would still need $3,205 per month

16

to pay her living expenses. See Kean v. Kean, 189 So. 3d 61, 66 (Ala. Civ. App. 2015) (noting that the starting point in calculating periodic alimony is the financial costs of maintaining the marital standard of living). The wife has $951 in monthly Social Security income to pay her monthly living expenses, leaving her a deficit of $2,254 each month. At trial, the wife requested $2,200 per month in periodic alimony.

The wife acknowledges that she could use the $9,000 in her separate money-market account and the approximately $151,000 in financial assets that she received in the property division to cover that shortfall, but she argues that she should not have to deplete those assets to meet her financial needs. Generally, a dependent spouse "should not be compelled to consume the principal of her property-distribution award in order to maintain the lifestyle to which she had become accustomed during the marriage." Kean, 189 So. 3d at 67. However, that general principle has not been applied to retirement accounts received in an equitable property division. The beneficiary of a retirement account customarily withdraws a portion of the account on a regular basis to pay his or her living expenses. For example, in this case, the husband was

17

already withdrawing a net amount of $2,400 each month from his 401(k) account to pay the parties' living expenses. It would not be inequitable for the wife to continue using the funds from the retirement accounts she was awarded in the same manner. Thus, we affirm the judgment insofar as it denied the wife's claim for periodic alimony.

We agree, however, that by using the funds from the retirement accounts to pay her estimated monthly living expenses, the wife would exhaust her retirement accounts within a relatively short period. She would then have to rely on the funds in her money-market account and the $50,000 remaining from the proceeds of the sale of the marital residence to pay her living expenses, which, when coupled with her Social Security income, would also be exhausted within a relatively short period, contrary to <u>Kean</u>.

The wife has shown that she can only temporarily maintain the marital standard of living using her retirement accounts and her Social Security income. When a trial court denies periodic alimony, but the evidence indicates that the circumstances regarding the financial needs of a spouse will likely change, the trial court should reserve jurisdiction

18

to award periodic alimony based on those changed circumstances. See Rockett v. Rockett, 77 So. 3d 599, 604 (Ala. Civ. App. 2011). If the trial court fails to reserve jurisdiction to award periodic alimony upon future consideration, its power to modify its judgment denying periodic alimony is "permanently lost." Kennedy v. Kennedy, 743 So. 2d 487, 490 (Ala. Civ. App. 1999); see also § 30-2-57(c). Based on the probability that the wife will not be able to remain self-supporting, we conclude that the trial court should have reserved jurisdiction to award the wife periodic alimony. See Ex parte Killough, supra.

Section 30-2-57(c), Ala. Code 1975, which was enacted in 2017, see Ala. Acts 2017, Act No. 2017-164, § 2, now provides:

> "In cases in which a party has proven a lack of means to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, but there exists a present inability of the other party to supply those means, a court, when the circumstances of the case make it equitable, shall reserve jurisdiction to award rehabilitative or periodic alimony. If there is neither an award of alimony nor a reservation of jurisdiction at the time of the divorce, the court shall permanently lose jurisdiction to subsequently make an award of rehabilitative or periodic alimony."

Section 30-2-57(c) mandates that a trial court reserve jurisdiction to award periodic alimony in the future when a claim for periodic alimony has been denied solely because of the present inability of the respondent spouse to pay and the circumstances of the case make it equitable.

The dissent argues that § 30-2-57(c) deprives a trial court of the power to reserve jurisdiction to award periodic alimony in the future in any other situation, such as when the petitioning spouse has no present need for periodic alimony, but that need may arise due to changed circumstances. However, as our supreme court explained in Morgan v. Morgan, 211 Ala. 7, 8, 99 So. 185, 186 (1924), in this state, the power of a trial court to retain jurisdiction to modify a judgment relating to periodic alimony based on changed circumstances did not emanate from statutory law. That power derived from the inherent jurisdiction of a court of equity in divorce proceedings. See Jones v. Jones, 131 Ala. 443, 447, 31 So. 91, 92 (1901). Section 30-2-57(c) recognizes this equitable power and directs how that power shall be exercised in the circumstances set out therein. Section 30-2-57 does not go further to preclude a trial court from exercising its power as a court of equity in divorce proceedings

20

to address other circumstances that may require the retention of jurisdiction to award periodic alimony in the future.

The dissent essentially contends that, by omitting other circumstances in which trial courts have traditionally reserved jurisdiction to award periodic alimony, § 30-2-57(c) impliedly prohibits a trial court from continuing to exercise its equitable power in those circumstances. However, statutes are to be construed strictly so as not to alter the common law in any way except as expressly declared. See Arnold v. State, 353 So. 2d 524, 526 (Ala. 1977). Section 30-2-57(c) does not expressly declare that a trial court may reserve jurisdiction to award periodic alimony only in the circumstances set forth therein, and the statute does not expressly declare that a trial court cannot reserve jurisdiction to award periodic alimony in other circumstances. We do not glean from the language in § 30-2-57(c) any clear intention of the legislature to make such a drastic alteration of the common law enforced by Alabama courts for over 100 years. See Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952) ("Statutes which invade the common law ... are to be read with a presumption

favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.").

Lastly, the husband argues that the wife did not properly preserve the reservation issue for appellate review, citing Holland v. Holland, 252 So 3d 1081 (Ala. 2017). However, in Holland, Mrs. Holland did not make any argument to the Shelby Circuit Court, neither at trial nor in a postjudgment motion, that it should have reserved jurisdiction to award her periodic alimony, nor did she make any legal or factual argument to justify her position on appeal. See 252 So. 3d at 1088. In this case, in her postjudgment motion, the wife expressly argued that the trial court abused its discretion in failing to reserve jurisdiction to award her periodic alimony. Thus, the wife did not waive her argument by failing to first raise it in the trial court or by failing to make a legal argument with citation to authorities on appeal as required by Rule 28(a)(10), Ala. R. App. P., as was the case in Holland.

Generally speaking, a trial court has the discretion to disregard a new legal argument raised in a postjudgment motion, see Green Tree Acceptance, Inc. v. Blalock, 525 So. 2d 1366 (Ala. 1988), but, when

adjudicating a claim for alimony, a trial court is guided primarily by principles of equity. In recognizing that a court of equity has the power to reserve jurisdiction over alimony awards to account for potential changes in the financial circumstances of the parties, our supreme court has held that the trial courts should exercise that power liberally to "mold its decrees that justice is meted out without oppression." See Jones v. Jones, 131 Ala. at 447, 31 So. at 92. Thus, "[t]he trial court should reserve the issue of alimony if the facts indicate that future circumstances may entitle either party to a later award of alimony." Kirkland v. Kirkland, 860 So. 2d 1283, 1290 (Ala. Civ. App. 2003). In exercising its discretion, the trial court, acting as a court of equity, should not have disregarded the wife's postjudgment argument asserting that it should have reserved jurisdiction to award her periodic alimony in the future.

Conclusion

We affirm that part of the amended divorce judgment denying the wife periodic alimony. We reverse that part of the amended divorce judgment declining to reserve jurisdiction to award the wife periodic alimony in the future, and we remand the case with instructions for the trial court to amend the judgment in accordance with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Hanson, J., concurs.

Fridy, J., concurs in the result, without writing.

Edwards, J., dissents, without writing.

Lewis, J., dissents, with writing.

LEWIS, Judge, dissenting.

I respectfully dissent from the main opinion's reversal of the judgment entered by the Madison Circuit Court ("the trial court"). The main opinion reverses the trial court's judgment on the basis that the trial court exceeded its discretion by declining to reserve the issue of periodic alimony "[b]ased on the probability that the wife will not be able to remain self-supporting." ___ So. 3d at ___ (citing Ex parte Killough, 728 So. 2d 589, 589-90 (Ala. 1998)).

Section 30-2-57(c), Ala. Code 1975, provides:

"In cases in which a party has proven a lack of means to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, but there exists a present inability of the other party to supply those means, a court, when the circumstances of the case make it equitable, shall reserve jurisdiction to award rehabilitative or periodic alimony. If there is neither an award of alimony nor a reservation of jurisdiction at the time of the divorce, the court shall permanently lose jurisdiction to subsequently make an award of rehabilitative or periodic alimony."

Notably, § 30-2-57(c) does not state that a trial court may reserve jurisdiction to award periodic alimony when the evidence indicates that the obligee spouse will not remain self-supporting, even though

25

reservation of jurisdiction to award periodic alimony under such a condition was allowed under the common law. The main opinion determines that, in enacting § 30-2-57(c), there was no legislative intent to abrogate the preexisting common law concerning the reservation of periodic alimony. I disagree.

"The common law is the law of Alabama unless it is repealed by statute." Borden v. Malone, 327 So. 3d 1105, 1120 (Ala. 2020) (citing § 1-3-1, Ala. Code 1975). In determining whether a statute abrogated the common law, our supreme court in State v. Grant, 378 So. 3d 576, 581 (Ala. 2022), cited Beale v. Posey, 72 Ala. 323, 330 (1882), which stated: "All statutes are construed in reference to the principles of the common law; and it is not to be presumed that there is an intention to modify, or to abrogate it, further than may be expressed, or than the case may absolutely require." Our supreme court in Grant explained: "'A statute which is an innovation on the common law will not be extended further than is required by the letter of the statute.'" 378 So. 3d at 581 (quoting Pappas v. City of Eufaula, 282 Ala. 242, 244, 210 So. 2d 802, 804 (1968)).

The court noted, however, that the legislature is not required to expressly state an intention to abrogate the common law in order to do so.  Id.

In Douglas v. Griggers, [Ms. SC-2023-0259, Mar. 29, 2024] ___ So. 3d ___, ___ (Ala. 2024), our supreme court, in interpreting § 6-6-591, Ala. Code 1975, reasoned:

> "Under the plain meaning of § 6-6-591, there are only two alternative methods for commencing a quo warranto action: (1) at the direction of a circuit-court judge or (2) without the direction of a circuit-court judge on the information of any person giving security for the costs of the action. No other permissible methods for commencing a quo warranto action are provided by the statute.
>
> > "'The maxim "expressio unius est exclusio alterius," though not a rule of law, is an aid to construction. It has application when, in the natural association of ideas, that which is expressed is so set over by way of contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment. ... [U]nder it an act which, although neither expressly forbidden nor authorized, is contrary to the plain implication of a statute, is unlawful.'
>
> "Weill v. State ex rel. Gaillard, 250 Ala. 328, 334, 34 So. 2d 132, 137 (1948).
>
> "In this case, it is undisputed that a circuit-court judge did not direct Griggers to commence this action. It is also

27

undisputed that Griggers did not give security for the costs of the action. Thus, neither of the two permissible alternative methods set forth in § 6-6-591 for commencing a quo warranto action were satisfied in this case."

Similarly, in the present case, § 30-2-57(c) provides for the reservation of jurisdiction to award periodic alimony when

"a party has proven a lack of means to acquire the ability to preserve, to the extent possible, the economic status quo of the parties as it existed during the marriage, but there exists a present inability of the other party to supply those means, a court, when the circumstances of the case make it equitable …."

"No other [circumstances under which a trial court may reserve jurisdiction to award periodic alimony] are provided by the statute." Douglas, ___ So. 3d at ___. Under the maxim expressio unius est exclusio alterius, the omission of certain reasons for reserving jurisdiction to award periodic alimony while including only one reason for reserving jurisdiction to award periodic alimony implies that the reasons that were valid reasons for the reservation of jurisdiction to award periodic alimony under the common law but were omitted in § 30-2-57(c) are no longer valid reasons for the reservation of that jurisdiction. Id. Therefore, I conclude that a showing of evidence indicating that the obligee spouse

28

will not remain self-supporting is no longer sufficient to support a reservation of jurisdiction to award periodic alimony.

Based on the foregoing, I respectfully dissent from the main opinion's reversal of the trial court's judgment for failure to reserve jurisdiction to award periodic alimony.